Chief Judge Breitel.
In CPLR article 75 proceedings to review an arbitration award rejecting a college teacher’s grievance for alleged sex discrimination in denying her promotion, the faculty union appeals. The grievance was raised under a collective bargaining agreement between the union and the New York City Board of Higher Education covering the faculty of the Staten Island Community College.
The appeal is from the order of the Appellate Division affirming a judgment at Special Term confirming the award. The board had moved to confirm the award and the union moved to vacate the award. The award had rejected the grievance for insufficiency of proof. In the present proceedings the union charges the arbitrator with misconduct in not directing a faculty member of a personnel committee to reveal confidential discussions in the committee concerning the denial of promotion to the college teacher (CPLR 7511, subd [b], par 1, cl [i]). But for such refusal, the union argues, a grievance for discrimination might have been made out.
The issue is whether the arbitrator, concededly empowered to interpret the collective agreement, was entitled to conclude that the agreement embraced practices and a written policy of the board mandating the confidentiality of proceedings in the personnel committee. If so, the arbitrator properly refused to compel the faculty witness to breach the rule of confidentiality and was not guilty of misconduct in rejecting pertinent evidence.
There should be an affirmance. Generally an arbitrator *322 may not exclude pertinent evidence. The collective agreement provided, however, that the by-laws of the board, except if in conflict with the agreement, continued the rights of the entities and bodies within the City University. The by-laws established the Personnel and Budget Committee and, under a so-called Max-Kahn memorandum of many years standing, the proceedings in the personnel committee are confidential. Hence, the arbitrator by his power to interpret the collective agreement was entitled to find that, as the Max-Kahn memorandum provides, it would have been professional misconduct for the faculty member to disclose committee discussions. In so concluding, the arbitrator was not importing a privilege of confidentiality but interpreting, as he had the power to do, the collective agreement. Such intrepretation, so long as it was an interpretation of the agreement providing for arbitration, is beyond review in the courts because an arbitrator’s award is not subject to judicial review for errors of law or fact.
Professor Irene Deitch is an assistant professor in the Department of Psychology, Sociology and Philosophy in the Staten Island Community College. In the fall of 1972, the departmental committee refused to recommend her for promotion to associate professor with tenure. She appealed to the college-wide faculty Personnel and Budget Committee, and that committee also did not recommend her promotion.
Professor Deitch, who is still employed as an assistant professor at the college, does not hold a doctorate required by the by-laws of the board for promotion to the rank of associate professor with tenure. The requirement would have to be waived for her to obtain such promotion.
Following the action of the personnel committees, the faculty union filed a grievance on her behalf, under the collective bargaining agreement. The grievance alleged that the failure of the committees to recommend Assistant Professor Deitch was due to unlawful sex discrimination.
The grievance being unresolved, in accordance with the procedures provided in the collective agreement, the faculty union demanded arbitration. An arbitration hearing was begun on May 21, 1973. At the hearing the faculty union presented statistics showing various proportions in number and rank between men and women on the faculty. There was some other undescribed evidence purporting to show some sort of unlawful discrimination against Professor Deitch.
The faculty union offered the testimony of Professor Mor *323 timer Schiff, Chairman of the Department of Performing Arts, and a member of the college-wide personnel committee. When union counsel questioned Professor Schiff about personnel committee discussions, board counsel objected. The board counsel argued that a disclosure would violate a rule of confidentiality prescribed by a written policy (the Max-Kahn memorandum) and by-law incorporated by reference in the collective agreement. The union counsel argued to the contrary that Professor Schiff should be directed to testify because the grievance and arbitration provisions of the collective agreement guaranteed opportunity for a full hearing, including the right to obtain relevant testimony.
After deliberation, the arbitrator refused to direct Professor Schiff to testify concerning the personnel committee discussions. Thereafter, union counsel stated that it could not sustain its burden without his testimony and therefore would not proceed further. On October 16, 1973 the arbitrator denied the grievance.
An arbitrator’s resolution of questions of substantive law or fact is not judicially reviewable (Matter of Raisler Corp. [New York City Housing Auth.], 32 NY2d 274, 282). In an arbitration, substantive and evidentiary rules applicable in courts of law are waived by the parties. Except as provided by agreement to the contrary the arbitrator is not bound by the rules of evidence (Lentine v Fundaro, 29 NY2d 382, 385, and cases cited).
An arbitrator’s award, however, may be vacated for prejudicial misconduct by the arbitrator (CPLR 7511, subd [b], par 1, cl [i]). One form of misconduct is the refusal to hear pertinent and material evidence (e.g., Gervant v New England Fire Ins. Co., 306 NY 393, 400; Matter of Katz [Uvegi], 18 Misc 2d 576, 583 [Pette, J.], affd 11 AD2d 773; see Matter of Raisler Corp. [New York City Housing Auth.], 32 NY2d 274, 282-283, supra, and sources cited).
It would not be misconduct, however, for an arbitrator to refuse to hear evidence excluded by the agreement itself. That result follows from the basic doctrine that parties may by their agreement to arbitrate broaden or narrow its scope (Matter of American Silk Mills Corp. [Meinhard—Commercial Corp.] 35 AD2d 197, 200 [Eager, J.]; Domke, Commercial Arbitration, p 99).
Section 6.2 of the collective agreement by definition provides that:
*324 "A grievance is an allegation * * * that there has been:
"(1) a breach, misinterpretation or improper application of the terms of this Agreement; or
"(2) an arbitrary or discriminatory application of, or a failure to act pursuant to, the Bylaws and written policies of the Board related to the terms and conditions of employment.”
Sections 1.2 and 1.3 of the collective agreement incorporate nonconflicting board policy which predates the collective agreement. In pertinent part that agreement provides:
"1.2 Nothing contained in this Agreement shall be construed to diminish the rights granted under the Bylaws of the Board to the entities and bodies within the internal structure of CUNY so long as such rights are not in conflict with this Agreement. If provisions of this Agreement require changes in the Bylaws of the Board, such changes will be effected.
"1.3 If there is an inconsistency or conflict between the Bylaws of the Board and this Agreement, the provisions of this Agreement shall apply.”
There is a board policy which establishes the confidentiality of personnel committee meetings. In 1958 a memorandum or report by a Mrs. Max and a Mr. Kahn on appointment and tenure procedures was prepared for the Board of Higher Education. In 1967 its recommendations were made formal board policy and have been followed since. The Max-Kahn memorandum states in part (pars B2, B3): "On balance, we have decided to recommend against ever assigning reasons for non-reappointment or non-promotion. We likewise believe that it would be professional misconduct for a member of a P & B committee to disclose the substance or even the nature of the discussion at the P & B meeting. As far as the actions of a Department and/ or its committees in respect to a candidate are concerned, only the Chairman of the Department should be empowered to discuss these actions with a candidate. As far as the actions of the college P & B committee, with respect to a candidate are concerned, only the president of the college or his designee should be empowered to discuss these actions with a candidate * * * [I]t would be a breach of faith to violate such an understanding of confidentiality.” (Emphasis in the original.)
The arbitrator in his opinion and award determined ex *325 pressly that the Max-Kahn memorandum was a written policy of the board. He therefore in effect was holding, as he had the unreviewable power to do, that the policy was an integral part of the collective agreement. Consequently, he refused to require Professor Schiff to testify in violation of the Max-Kahn memorandum of policy. True, the arbitrator could not have excluded pertinent evidence. Nevertheless, in accordance with his interpretation of the collective agreement he was required to refuse to direct testimony in breach of an established policy of the board under its by-laws. This result followed from the express provision of the collective agreement preserving the board’s policies if not inconsistent with the agreement. No inconsistency is evident, and it is a vain bootstrap to argue that unlawful discrimination in the framework of consensual arbitration dictates a contrary view.
The subject should not be left without noting that there is an inevitable paradox in submitting issues of unlawful discrimination to consensual arbitration, where the parties are generally free to control the procedures and substantive jurisdiction in arbitration. In a court of law, for example, the testimony of Professor Schiff would not be excludible unless a privilege established by statute or decisional law so requires (People ex rel. Mooney v Sheriff, 269 NY 291, 294-295; Richardson, Evidence [10th ed], § 409). Moreover, it could hardly be true that unwaivable substantive rights could be waived and they were not "waived” in this matter, but that is not an issue in these proceedings (see Alexander v Gardner-Denver Co., 415 US 36).
Of course, the voluntary arbitration process is beneficial and preferred as a method for resolution of labor disputes. Yet it is still true that any engagement to arbitrate, by agreement or submission, should always be carefully canvassed in advance for appropriateness (see Fitzhugh, Role of Arbitrators Under Scrutiny, NYLJ, Dec. 18, 1975, p 1, col 2, discussing voluntary labor arbitration in unlawful discrimination cases).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.