Anna Selma Vinje MORPURGO,
Plaintiff,

v.

BOARD OF HIGHER EDUCATION IN CITY OF NEW YORK, as Board of Trustees for the City University of New York, the Graduate School and University Center of the City University of New York, and John/Jane Doe, employees, former employees et al., Defendants.

Anna Selma Vinje MORPURGO,
Plaintiff,

v.

UNITED STATES of America et al., Defendants.

Anna Selma Vinje MORPURGO,
Plaintiff,

v.

PROFESSIONAL STAFF CONGRESS/CUNY (PSC) et al., Defendants.

Nos. 75 Civ. 186, 75 Civ. 3840, 75 Civ. 4913.

United States District Court, S. D. New York.

Nov. 18, 1976.

Anna Selma Vinje Morpurgo pro se.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for defendants U. S., Edward H. Levi, Henry Kissinger, William Saxbe and Richard Kleindienst; Nathaniel L. Gerber, Asst. U. S. Atty., New York City, of counsel.

Wien, Lane & Malkin, New York City, for defendant Mass. Institute of Technology; Robert G. Desmond, New York City, of counsel.

Jackson, Nash, Brophy, Barringer & Brooks, New York City, for defendant Princeton University; Ronald S. Herzog, New York City, of counsel.

Michael B. Mukasey, Patterson, Belknap & Webb, New York City, for defendant Mary Mothersill; Shea & Gardner, Washington, D. C., of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendants Bd. of Higher Ed., N.Y.C.; Giardino; Kibbee; Newton; Proshansky; Hillerbrand; Koslow; Edel; Elias; Myers; McLaughlin; Saunders; Held; Caws; Grewe; Hong; Thornton; Rees; Lewis; Schmeller; Rosemary Carroll, Asst. Corp. Counsel, New York City, of counsel.

D. Nicholas Russo, New York City, for defendant Professional Staff Congress/CUNY.

Anthony M. Lanzone & Associates, New York City, for defendants Vladeck, Elias, Vladeck & Lewis; Judith P. Vladeck; Edwin L. Smith, Brooklyn, N. Y., Kenneth Scott, Merrick, N. Y., of counsel.

Michael C. McGoings, E. E. O. C., Washington, D. C., for defendants Stern; Holt; Munoz; Donato; Walker; Kersey; Archer.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff was formerly employed by the New York City Board of Higher Education ("BHE") as an adjunct lecturer at Queensboro Community College ("QCC"), a division of the City University of New York, and was enrolled in a doctoral program at City University of New York ("CUNY"). Appearing pro se, she commenced three separate actions under the Civil Rights Act[1] against various agencies and individuals, charging a multiplicity of wrongful acts and conduct originating, for the most part, about CUNY's termination of her studies

leading to a doctorate degree and its refusal to renew her contract as an adjunct lecturer at QCC. With the passage of time, and as she sought admission to other educational programs and research projects and awards of scholarships and fellowships with their stipends, her charges were broadened to encompass all who came within her path before, at the time of and subsequent to her rejections.

This Court previously dismissed two of plaintiff's original complaints and a first amended complaint, observing that although a plaintiff appearing pro se deserves to have his complaint viewed by a less stringent standard than when drafted by a lawyer,[2] the Federal Rules of Civil Procedure nevertheless remain applicable to such a plaintiff, particularly one who, as the plaintiff here, appears to be an educated person.

We now have before us the amended complaints in the three actions, which name as defendants the United States of America, the present and two former Attorneys General of the United States, the Secretary of State of the United States, Princeton University, Massachusetts Institute of Technology, the BHE, the New York State Division of Human Rights, the Professional Staff Congress/CUNY ("PSC") (a union of which plaintiff is a member), the attorneys who represented plaintiff in connection with an Equal Employment Opportunity Commission ("EEOC") grievance, and various individuals, some of whom are officials of named defendants sued in both their official and individual capacities.

Defendants in all three actions have moved on various grounds to dismiss the complaints, and perforce we consider each motion separately. In order to set the motions in proper perspective, it is desirable, to the extent that one can discern the thrust of plaintiff's allegations, to set them forth under her respective complaints.

1. It is not entirely clear what provisions of law the plaintiff relies on, for her complaints are far-ranging and diffuse, but, on the whole, they assert violations of the Civil Rights Act. Two of plaintiff's actions were originally assigned to other judges, but pursuant to Local Calendar

Rule 13 they were transferred as "related cases" to this Court, which had the case with the lowest docket number pending before it.

2. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

## 75 CIVIL 186 (AMENDED COMPLAINT)

In this action, the first instituted by plaintiff in this Court, she sues the BHE, its employees, and various unnamed defendants for conspiracy and failure to prevent a conspiracy to deprive her of her constitutional and civil rights. Plaintiff alleges that, although she was qualified, the defendants refused to accept her into several graduate programs and that they wrongfully denied her scholarships and financial aid for those programs and for other programs in which she had been enrolled. Plaintiff also alleges that the defendants, in order to further, cover up or justify their unlawful acts, generated and maintained false and scandalous records concerning her and conspired with unspecified persons to slander plaintiff, to withhold records and references from academic deans and would-be sponsors of plaintiff, thereby foreclosing them from making favorable determinations about her, to punish or bribe BHE and QCC employees in order to prevent them from supporting plaintiff's grievances or giving testimony favorable to plaintiff in unspecified proceedings, to punish faculty members and students who indicated support of plaintiff in her charges, and to incite "racist, sexist, and religious militants and . . . narcotics addicts . . . to retaliate against plaintiff as a common enemy."

## 75 CIVIL 3840 (SECOND AMENDED COMPLAINT)

In this action, plaintiff broadens her conspiracy charges in her first complaint to include federal officials. She charges that the conspiracy originated when she was matriculated at Hunter College, CUNY and from there spread throughout the United States and abroad. Essentially, she claims that the United States of America, past and present Attorneys General of the United States, the Secretary of State and unspecified federal agencies subjected her to intensive wiretapping and other "counterintelligence" activities, classified her as "undesirable" and engineered an immense conspiracy to deny her admittance into various doctoral programs and to prevent her from obtaining employment or matriculation in scientific research projects although she was fully qualified. Plaintiff alleges that nearly every person involved in her dismissal as an adjunct lecturer at QCC and in the decisions not to accept her into the various programs to which she applied took action pursuant to "confidential federal directives" and later engaged in a massive cover-up conspiracy to stymie plaintiff's investigations into the "real reasons" behind her rejections. Thus, the BHE, its employees and CUNY employees—now allegedly acting under federal government directives—are again claimed to have falsified plaintiff's records and examination scores, to have spread false information about her, and to have coerced others into abandoning her cause, all in order to prevent her from continuing her academic career. Similarly, Massachusetts Institute of Technology and Princeton University, allegedly complying with federal directives, unlawfully rejected her applications to various doctoral programs. Defendant Mary Mothersill, who as Chairperson of the American Philosphical Association's Committee on the Status of Women in the Profession investigated plaintiff's labor grievance against the BHE, is alleged to have discovered evidence of the conspiracy among the various defendants, but to have joined the conspiracy by withholding that evidence from plaintiff. Finally, as noted, all these defendants are charged with covering up their participation in the original conspiracy.

## 75 CIVIL 4913 (AMENDED COMPLAINT)

This action includes a new group of defendants. It focuses primarily on the decision in 1972 not to rehire plaintiff as an adjunct lecturer in philosophy at QCC. Plaintiff repeats many of the allegations contained in her prior complaints, but also charges that the PSC, plaintiff's registered collective bargaining representative at the college, employees of the EEOC and of the New York State Division of Human Rights, and the law firm that represented plaintiff

with respect to her EEOC complaint all joined in the conspiracy to deprive her of her rights and, in furtherance thereof, misprocessed or otherwise mishandled her grievances advanced in arbitration proceedings and, subsequently, in complaints filed with the Division of Human Rights and with the EEOC. Again, all defendants are alleged to be part of a conspiracy to cover up all evidence of the wrongful actions they are purported to have taken.

## MOTION BY THE BOARD OF HIGHER EDUCATION

The BHE, its employees and CUNY employees move for dismissal of the complaints against them on the grounds that (1) the claims are barred by res judicata; (2) plaintiff has failed to exhaust administrative remedies; and (3) the complaints fail to state a claim upon which relief can be granted.

As in the instance of the other defendants in these actions, the complaints against the BHE and other "municipal defendants" are incredibly muddled, vague and conclusory. The claims that are at least minimally understandable and that can be culled from the constant stream of invective running through plaintiff's complaints may, however, be summarized as follows:

In her first action, plaintiff claims that the BHE has denied her equal rights to participate in various higher educational programs and to share in educational grants. As part of this alleged denial of plaintiff's rights, the BHE is claimed to have maintained records of various libelous statements about plaintiff, to have slandered plaintiff and encouraged unnamed persons to slander her, to have prevented investigations into plaintiff's grievances by rearranging files and by barring access to records, to have bribed and threatened employees to cause them to withhold favorable testimony about plaintiff, and to have incited unnamed militants, drug addicts and criminals to "retaliate" against plaintiff in unspecified ways.

In the second action, expanded to include federal officials, she reiterates many of the charges against the BHE in her first complaint and further claims that the BHE and CUNY employees falsified her examination scores and academic evaluations in order to effect her dismissal from the doctoral program at CUNY. In this complaint, however, she alleges that these actions were mandated by confidential directives issued by unspecified federal agencies and were in furtherance of a vast conspiracy to deprive her of her civil rights. The municipal defendants are charged with participation in a similarly widespread cover-up conspiracy to prevent plaintiff from discovering the truth about the circumstances surrounding the BHE's actions.

In her third action, expanded to include, among others, her union representatives and her attorneys, plaintiff again charges the municipal defendants with participation in a conspiracy and a cover-up conspiracy, both of which had as their object denials and infringements of plaintiff's constitutional rights. QCC's decision in 1972 not to rehire plaintiff as an adjunct lecturer in philosophy is claimed to have been taken in furtherance of the conspiracy and to have been discriminatory. BHE is apparently alleged to have engineered this decision and is charged with intimidating and misleading persons who might have supported plaintiff in her efforts to be reinstated or hired elsewhere. Plaintiff also claims that the BHE, without her permission, exchanged confidential information about her with the law firm that represented her in connection with an EEOC complaint filed after her dismissal from QCC.

The first ground upon which the BHE moves to dismiss is that the complaints are barred by the res judicata effect of a 1974 decision handed down in an Article 78 proceeding [3] instituted by plaintiff in the New York State Supreme Court. In that proceeding, plaintiff attacked the decision to terminate her participation in the CUNY doctoral program as being arbitrary and capricious and charged that the decision

---

3. See N.Y.C.P.L.R. §§ 7801–06 (McKinney's 1963).

was made in retaliation for her involvement in civil rights activities. The State Supreme Court justice ruled against her on these issues, finding termination was not arbitrary or capricious and was not taken in retaliation for her civil rights activism or other activities; rather, he held that plaintiff's dismissal was adequately justified by her eleven separate failures to pass various parts of a comprehensive examination required to be taken by all doctoral candidates.

■ To the extent that the Article 78 proceeding adjudicated the issues whether the BHE or CUNY employees acted arbitrarily or capriciously in dropping plaintiff from the doctoral program and whether this action was taken in retaliation for plaintiff's civil rights activities, it is res judicata for purposes of plaintiff's present suits. However, as the above-summarized portions of plaintiff's complaints indicate, the allegations against the municipal defendants in this action charge constitutional and federal statutory violations of her rights and so go much beyond the issues litigated in the Article 78 proceeding. Moreover, although res judicata would ordinarily operate to bar subsequent litigation of all claims that were or could have been asserted in a prior action, the application of that principle has been relaxed somewhat by the Court of Appeals in civil rights actions. The rule now appears to be that a plaintiff is not barred from asserting those constitutional claims that could have been, but were not, advanced in a state court proceeding; rather, he is barred from renewing only those claims specifically raised and passed upon by the state courts.[4]

■ The municipal defendants also move for dismissal on the ground that plaintiff has failed to exhaust her administrative remedies. This claim is based upon a proceeding pending before the State Division of Human Rights in which plaintiff has challenged her dismissal as adjunct lecturer as being discriminatory and retaliatory. Although a plaintiff asserting a civil rights action need not first seek relief in the state courts before bringing suit in the federal courts,[5] the rule in this Circuit is that once he has commenced a state administrative proceeding, he must exhaust that remedy in his chosen forum before a section 1983 action may be instituted in the district courts.[6] However, the administrative remedy provided plaintiff by the New York Human Rights Law is limited to a section 1983 claim relating to the BHE's allegedly discriminatory termination of plaintiff as an employee.[7] Moreover, plaintiff asserts this very claim under Title VII of the Civil Rights Act,[8] and her prior presentation of the claim to the State Division of Human Rights and to the EEOC, which issued her a right to sue notice, constitutes sufficient exhaustion of administrative remedies to permit the claim to be asserted in the present action.[9]

---

4. *Newman v. Board of Educ.,* 508 F.2d 277 (2d Cir.), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975); *Lombard v. Board of Higher Educ.,* 502 F.2d 631 (2d Cir. 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975).

5. *See, e. g., Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Sostre v. McGinnis,* 442 F.2d 178, 183 (2d Cir. 1971) (en banc), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972).

6. *James v. Board of Educ.,* 461 F.2d 566, 570–71 (2d Cir.), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972); *Eisen v. Eastman,* 421 F.2d 560 (2d Cir. 1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970);

*see Runyon v. McCrary,* 427 U.S. 160, 186, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (Powell, J., concurring). *But see Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Houghton v. Shafer,* 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); *Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967).

7. *See* N.Y.Exec.L. §§ 296, 297 (McKinney's 1972 & Supp.1976).

8. 42 U.S.C. § 2000e *et seq.*

9. *See* 42 U.S.C. § 2000e–5; *EEOC v. Union Bank,* 408 F.2d 867 (9th Cir. 1968); *Faraci v. Hickey-Freeman Co.,* 404 F.Supp. 1229 (W.D.N.Y.1975). This is not to say that portions of plaintiff's Title VII claims are not barred by the res judicata effect of her prior Article 78 proceeding.

Nevertheless, plaintiff's complaints, insofar as they seek to charge the BHE and CUNY with violations of Title VII of the Civil Rights Act, must be dismissed for failure to state a claim. Plaintiff merely sets forth brief, naked assertions that the failure to rehire her as adjunct lecturer was an act of racial, religious, sexual or nationality-based discrimination. Given repeated opportunities to replead, plaintiff has failed to provide any factual allegations reasonably indicating that the BHE or its employees discriminated against her on the basis of any of these characteristics. Indeed, plaintiff's complaints not only fail to specify how or why the BHE's actions were discriminatory, but one cannot discern of what race, sex, religion or national origin plaintiff claims to be. At various points in her complaints she asserts that she is "of ambiguous race, religion, sex, national origin, and political affiliation"; that she is "female," "protestant/scientific skeptic," and "sepharadic/integrated"; and that she is "integrated, free-thinker, nonethnic and unisex." A complaint that fails to identify the basis for purported discrimination and that contains only confusing, conclusory and unsupported allegations of nebulous discriminatory actions cannot suffice to state a claim under Title VII.[10]

The bulk of plaintiff's claims against the movants concerning conspiracy, falsification of records, bribery, coercion and "cover-ups" that are not barred by res judicata must be dismissed for failure to state a claim upon which relief can be granted. Plaintiff's claims that BHE and various municipal employees participated in a federally-directed conspiracy to deprive her of her civil rights are so vague and conclusory that they fail to establish a cause of action under 42 U.S.C., section 1985(3). Although plaintiff has made some minimal effort to set forth the interrelationships of the alleged co-conspirators and the parameters of the conspiracy, she has done so by way of freewheeling and speculative allegations and has failed, after many admonitions by the Court, to allege any facts that could give rise to a reasonable inference of a conspiracy.[11] In addition, plaintiff's complaints do not present any facts to indicate that the BHE was motivated by a "racial, or perhaps otherwise class-based, invidiously discriminatory animus" to deny plaintiff equal protection of the laws.[12] Under such circumstances, plaintiff fails to state a claim under section 1985(3).

Plaintiff, for the most part, has also failed to allege, in anything but the most conclusory terms, any direct deprivation of constitutional rights occasioned by the BHE or its employees. Moreover, the BHE is not a "person" within the meaning of section 1983 and thus cannot be sued under that provision of the Civil Rights Act.[13] Giving the most liberal interpretation to plaintiff's claims, however, it is apparent that no cause of action under section 1983 based on discrimination has been alleged. Although plaintiff does claim that she was discriminated against when she was not rehired at QCC and when she was dropped from the CUNY doctoral program, she again sets forth only a hodgepodge of vague and conclusory allegations and provides no facts to indicate that these actions were the product of any motive or policy to discriminate against her on the grounds of her race, religion, nationality or sex, or because of

10. *See, e. g., Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 703 & n. 3 (2d Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972); *Marshall v. Electric Hose & Rubber Co.*, 65 F.R.D. 599, 603–06 (D.Del.1974); *cf. Scott v. University of Delaware*, 385 F.Supp. 937, 943–45 (D.Del.1974).

11. *See Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir. 1975); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972); *Powell v. Workmen's Compensation Bd.*, 327 F.2d 131, 137 (2d Cir. 1964).

12. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see Kletschka v. Driver*, 411 F.2d 436, 447 (2d Cir. 1969); *Bergman v. Stein*, 404 F.Supp. 287, 294 (S.D.N.Y.1975).

13. *Monell v. Department of Social Services*, 532 F.2d 259, 263–64 (2d Cir. 1976), *petition for cert. granted*, 45 U.S.L.W. 3508 (U.S. Jan. 25, 1977); *Kornit v. Board of Educ.*, 542 F.2d 593 (2d Cir. 1976).

her membership in any class whose interests are cognizable under section 1983. Moreover, with one exception, plaintiff's complaints do not sufficiently allege deprivation of any other constitutional rights and, in any event, fail to specify the persons whose acts are claimed to have harmed plaintiff.

Read liberally, however, plaintiff's complaints in 75 Civil 3840 and 75 Civil 4913 do allege with sufficient particularity that certain named employees of BHE and of CUNY violated plaintiff's right to due process in connection with the decisions not to renew her teaching contract and not to allow her to continue in the CUNY doctoral program. It is true that in some respects the allegations concerning these persons are contradictory; for example, plaintiff in one complaint alleges that these defendants were "coerced" into committing alleged unlawful acts against her, yet in a subsequent complaint she alleges those acts were "voluntary." [14] Obviously on this motion the Court does not pass on the verity of either allegation, which, for the purpose of a motion to dismiss, must be accepted. Thus, insofar as the complaints in 75 Civil 3840 and 75 Civil 4913 allege that defendants Edel, Newton, Kibbee, Koslow, Myers, Elias, Thornton, Hong, McLaughlin, Proshansky and Hillerbrand violated plaintiff's right to due process, they are upheld.

The entirety of the complaint in 75 Civil 186, in which the BHE is the only named defendant, and the other complaints, insofar as they relate to the BHE and to any municipal employees not mentioned in the preceding paragraph, are dismissed for the reasons heretofore enumerated.

## FEDERAL DEFENDANTS' MOTION TO DISMISS

The United States of America, Henry Kissinger, Edward Levi, William Saxbe and Richard Kleindienst (the "federal defendants") move to dismiss the Second Amended Complaint in 75 Civil 3840. The motion is made on the grounds that (1) the Court lacks subject matter jurisdiction; (2) the complaint does not state a claim on which relief can be granted; (3) the Court lacks personal jurisdiction over the individual federal defendants; and (4) venue is improper.

The allegations against the federal defendants may be summarized as follows. Plaintiff and others, as a result of their antiwar activities, became the subject of intrusive counterintelligence actions conducted by the CIA. Subsequently, plaintiff was classified "undesirable" by unspecified government agencies, was investigated and subjected to intensive wiretapping and other "counterintelligence" activities. These unspecified agencies issued confidential directives that plaintiff be terminated from matriculation in doctoral programs, and they presently direct schools and scientific research programs not to accept plaintiff. The federal defendants are also alleged to have covered up evidence of these activities and to have instructed unnamed subordinates to give false information in response to plaintiff's Freedom of Information Act requests. Finally, federal agencies or the individual federal defendants allegedly prevented Professor Mary Mothersill, chairperson of the American Philosophical Association's Committee on the Status of Women in the Profession, from investigating plaintiff's labor retaliation grievance and from revealing to plaintiff the "real reasons" for CUNY's rejection of her applications.

Plaintiff's claims against the federal defendants are dismissable on a number of grounds. First, plaintiff has again failed to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure. The complaint, presumably reflecting the full benefits of two opportunities to replead, is still confusing, redundant and conclusory. With respect to the federal defendants, it contains only vague, imprecise allegations that could not possibly provide fair notice of any claims plaintiff might have against them. Indeed, the only allegations against the federal defendants that even remotely identify an occurrence upon which a claim is based are those that relate to the alleged obstruc-

---

**14.** *See* Complaint in 75 Civ. 3840 ¶ 34; complaint in 75 Civ. 4913 ¶¶ 12, 19, 20, 23.

tion and subsequent cover-up of Mary Mothersill's investigation of plaintiff's grievance against the BHE. Even this allegation, however, does not identify which of the twenty-three individually named defendants were responsible for the alleged obstruction of the investigation. Moreover, other than the bald assertion that Mothersill refuses to reveal to plaintiff the "real reasons" for her dismissal, plaintiff pleads no facts that would indicate the existence of any interference with Mothersill's investigation. In sum, the complaint against the federal defendants must be dismissed for plaintiff's repeated failure to comply with Rule 8(a)(2).[15]

■ Additional grounds require dismissal of the complaint. Although not much amenable to legal analysis, the complaint does allege some sort of vast but peculiarly impenetrable conspiracy to prevent plaintiff from continuing her education and from obtaining employment in any research projects. But were the vague, conclusory allegations contained in the complaint deemed sufficient to withstand a motion to dismiss, an unwarranted burden of defense would be placed on the movants. Thus, in the Second Circuit, complaints based on the conspiracy provisions of the Civil Rights Act cannot rest on vague and conclusory allegations but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy."[16] Similarly, when a direct deprivation of rights is claimed under section 1983, the plaintiff must allege the defendant's direct and personal responsibility for the purportedly unlawful conduct of his subordinates.[17] This standard has been applied when federal officials are sought to be held liable in private suits based on causes of action arising under the Constitution.[18] The second amended complaint falls far short of compliance with these standards.

■ Although pro se civil rights complaints must be viewed with some latitude, liberal construction of pleadings should not be permitted to override completely the rights of defendants. Plaintiff simply fails to support her allegations with any factual details that—even imaginatively con-

15. *See Place v. Sheperd*, 446 F.2d 1239, 1244, 1246 (6th Cir. 1971); *Shakespeare v. Wilson*, 40 F.R.D. 500 (S.D.Cal.1966).

16. *Powell v. Workmen's Compensation Bd.*, 327 F.2d 131, 137 (2d Cir. 1964); *see Jacobson v. Organized Crime & Racketeering Section of U. S. Dep't of Justice*, 544 F.2d 637 (2d Cir. 1976); *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir. 1976); *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir. 1975); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972); *Kaufman v. Moss*, 420 F.2d 1270, 1275 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Scott v. University of Delaware*, 385 F.Supp. 937, 944–45 (D.Del.1974).

17. *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974); *Johnson v. Glick*, 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973); *Manfredonia v. Barry*, 401 F.Supp. 762, 770 (E.D.N.Y. 1975); *Mukmuk v. Commissioner of Dep't Correctional Services*, 369 F.Supp. 245 (S.D.N.Y. 1974).

18. *Black v. United States*, 534 F.2d 524 (2d Cir. 1976). One issue that was not addressed by the parties is the theory upon which plaintiff sues the federal defendants in their individual capacities. Although section 1985 of the Civil Rights Act does not require a defendant to have acted under color of state law, section 1983 does contain such a provision and is thus not applicable to persons acting under color of federal law. *Wheeldin v. Wheeler*, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605, 650 n. 2, 652 (1963); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339, 1346–47 (2d Cir. 1972); *Norton v. McShane*, 332 F.2d 855, 862 (5th Cir. 1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965). Presumably, plaintiff relies upon *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), as establishing a constitutional cause of action against federal officials for deprivation of her fourth and fifth amendment rights. She does not, however, adequately specify how these rights have been infringed. And while plaintiff's complaint may be read to assert a cause of action against federal officials arising directly under the fourteenth amendment, our disposition of the present motion makes it unnecessary to pass upon whether such a cause of action exists. The Court of Appeals has considered, but not decided, the question. *Brault v. Town of Milton*, 527 F.2d 730, 738 (2d Cir. 1975) (en banc).

sidered—could connect the federal defendants to any conspiracy to deprive her of her rights or to any actual deprivation of her rights. The acts alleged in furtherance of the purported conspiracy are mere speculations not supported by factual averments and, in any event, are not alleged with particularity.[19]

▮▮▮ Finally, no jurisdictional basis exists for plaintiff to sue the United States itself for damages, injunctive or declaratory relief. In her papers in opposition to the federal defendants' motion to dismiss, plaintiff represents that she does not intend to sue the United States for damages. Nonetheless, she may not sue it for injunctive or declaratory relief either. It has long been established that the United States, a sovereign entity, is immune from suit unless it consents to be sued.[20] Contrary to plaintiff's belief, the declaratory judgment act[21] does not constitute a consent by the United

States to be sued.[22] Nor, of course, can the United States itself be sued under 42 U.S.C., sections 1983 and 1985, and 28 U.S.C., section 1343, both because it is not a "person"[23] and because these provisions do not waive sovereign immunity.[24] Although mandamus is made generally available under 28 U.S.C., section 1361, that provision only gives district courts jurisdiction "to compel an officer or employee of the United States . . . to perform a duty owed to" a plaintiff and does not apply to the United States itself. Plaintiff requests relief from the United States and various of its officers that they are clearly not duty-bound to provide her; to the extent the relief requested lies within the discretion of such officers, section 1361 does not authorize mandamus to compel it.[25] In sum, as no jurisdictional basis appears to exist for suing the United States or the individual federal defendants in their official capacities,[26] the complaint, insofar as it might

19. For example, unspecified federal agencies are alleged "on information and belief" to have classified plaintiff as "undesirable" and to have subjected her to intensive wiretapping and other "counterintelligence" activities. Not a single factual allegation is put forth in substantiation of this conclusory claim. Apparently plaintiff believes that her repeated failure to obtain employment or admittance into graduate programs themselves warrant an inference of a government conspiracy against her; yet to accept such reasoning would surely be to stretch the fabric of logic and reality to the breaking point.

20. *See, e. g., United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

21. 28 U.S.C. § 2201.

22. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Anderson v. United States,* 229 F.2d 675 (5th Cir. 1956); *Zito v. Tesoriero,* 239 F.Supp. 354 (S.D.N.Y.1965). Indeed, the declaratory judgment act simply makes available a new remedy when an independent jurisdictional basis exists. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Field v. United States,* 340 F.Supp. 175 (S.D.N.Y.1972).

23. *United States v. City of Jackson,* 318 F.2d 1 (5th Cir. 1963).

24. *Beale v. Blount,* 461 F.2d 1133 (5th Cir. 1972).

25. *See Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 379 (2d Cir. 1973). Moreover, the United States must specifically consent to a suit in which it could be compelled to act. *Brown v. General Services Administration,* 507 F.2d 1300, 1307 (2d Cir. 1974), *aff'd,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The Court is unable to discover any such consent that would give it jurisdiction to hear the type of claims advanced by plaintiff.

26. Part of the relief requested by plaintiff is that the government turn over to her, for use before a grand jury that she requests the Court to convene, all the information it possesses relating to the alleged conspiracy against her and against her friends, co-workers and others. A small portion of this relief might be thought to be authorized under the Freedom of Information Act, which might allow plaintiff to procure information in the hands of government agencies "pertaining to [her]." 5 U.S.C.A. § 552a(d)(1). However, the Freedom of Information Act authorizes suit against federal agencies, not against individuals or the United States itself, and no agencies are named in plaintiff's complaint. *See* 5 U.S.C.A. § 552a(g)(1). In addition, the Act requires complainants to exhaust their administrative remedies before bringing suit, 5 U.S.C.A. § 552a(d), and failure to do so will result in dismissal. *See Satra Belarus, Inc. v. NLRB,* 409 F.Supp. 271 (E.D.Wis.1976). The present complaint fails to allege that administrative remedies have been exhausted. Plaintiff, in

assert claims of this nature, must be dismissed on jurisdictional grounds. Moreover, as previously stated, plaintiff's complaints against the United States and all individual federal defendants sued in any capacity must be dismissed for failure to state a claim.

## MOTHERSILL MOTION TO DISMISS

Defendant Mary Mothersill moves to dismiss the second amended complaint for failure to state a claim upon which relief can be granted. Plaintiff charges that Mothersill is withholding evidence of the conspiracy against her that Mothersill uncovered in the course of an investigation of plaintiff's grievance against the BHE. This investigation was allegedly undertaken by Mothersill in her capacity as Chairperson of the American Philosophical Association's Committee on the Status of Women in the Profession. Because of her failure to reveal to plaintiff the "real reasons" for the BHE's actions, Mothersill is charged with participation in the federally-directed conspiracy to deprive plaintiff of her civil rights. Somewhat inconsistently, plaintiff charges that Mothersill's participation in this conspiracy was not so much willful as it was the product of pressure put on her by the BHE, the federal government and unnamed others not to investigate plaintiff's claims thoroughly. Thus, Mothersill is cast more as a victim in the complaint than as a wrongdoer.

▪ In her affidavit in opposition to the dismiss motion, plaintiff states that her cause of action against Mothersill is based on Mothersill's failure to perform her duties in the face of unlawful federal intervention, which inaction is alleged to have been in violation of Title VII of the Civil Rights Act and Titles VI and IX of the Federal Higher Education Act.[27] There is nothing

in either of these acts that imposes a duty on a chairperson of a private professional association to investigate plaintiff's charges that her constitutional rights are being violated by a conspiracy between the government and various educational institutions or to require that chairperson to divulge any information to plaintiff. Thus, plaintiff's cause of action, if any, against Mothersill must rest on the claim that Mothersill participated in a conspiracy to violate plaintiff's rights in contravention of 42 U.S.C., section 1985.

Again, however, as is the case with most of the other individual defendants, the complaint against Mothersill fails to plead any facts that, if taken as true, would give rise to an inference that a conspiracy existed or that Mothersill was a member of such a conspiracy.[28] Plaintiff's allegations against Mothersill are wholly conclusory and not only fail to indicate that Mothersill's actions constituted an "intentional and purposeful deprivation of constitutional rights,"[29] but also appear to negate that Mothersill ever entered into the alleged conspiracy.

Plaintiff, in opposition to dismissal, advances the novel claim that she is unable to make more specific allegations "despite having ample information on which to base [them]," because "the mere allegation that a person is suspected of engaging in counterintelligence activities may be sufficient to prompt unstable persons of radical political persuasion to take violent action against even a mere suspect, and thus would be tantamount to 'shouting fire in a crowded hall.'" This assertion clearly cannot be allowed to shield an obviously inadequate complaint from the consequences of its failure to state a claim. Plaintiff has twice amended the complaint at issue and has been afforded more than adequate opportu-

---

opposition to the federal defendants' motion to dismiss, avers that she has exhausted her administrative remedies by making many requests for documents from federal agencies and by bringing a federal suit to mandamus the Attorney General to begin an investigation into her complaints. Such actions do not constitute exhaustion of remedies under the Act.

27. 20 U.S.C. §§ 1121–32, 1134–34s.

28. *See* cases cited in note 16 *supra*.

29. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see* cases cited in note 12 *supra*.

nities to come forward with her cause of action. The complaint against defendant Mothersill is accordingly dismissed with prejudice.

### PROFESSIONAL STAFF CONGRESS MOTION FOR DISMISSAL OR FOR SUMMARY JUDGMENT

PSC, an unincorporated labor organization certified as the collective bargaining agent for teaching staff employees at CUNY, moves for summary judgment against the plaintiff, or, in the alternative, dismissal of the complaint for failure to state a claim upon which relief can be granted. Plaintiff alleges that individuals employed by the PSC acted unlawfully to cover up evidence of counterintelligence actions taken against her, withheld evidence of other unspecified invasions of her privacy and engaged in a conspiracy to cover up her union grievances. The PSC grievance counselor who represented plaintiff when her complaints against CUNY were submitted to arbitration is alleged to have presented her case inadequately and to have wrongfully failed to press plaintiff's claim of discrimination in the arbitration proceedings. The PSC is also alleged to have exchanged confidential information concerning plaintiff with other defendants without obtaining her consent and thus to have impeded her litigation efforts. Finally, the PSC is alleged to have participated in the conspiracy to interfere with plaintiff's civil rights.

Many of these allegations obviously fail to state a claim upon which relief can be granted. But reading the complaint with liberality, three possible causes of action against the PSC suggest themselves. First, plaintiff charges the PSC with participation in a conspiracy to deprive her of her civil rights in violation of 42 U.S.C., section 1985. Second, she alleges that the PSC has directly discriminated against her in violation of Title VII of the Civil Rights Act, specifically section 2000e–2 of 42 U.S.C. Finally, the complaint may be read as attempting to charge the PSC with a breach of its statutory duty of fair representation.

At the outset, it is once again clear that plaintiff has not tendered factual allegations tending to show that the PSC participated in a conspiracy to deprive her of her civil rights. Indeed, the allegations against the PSC relating to its alleged participation in a conspiracy are so vague and conclusory that they fail to establish a cause of action under section 1985.[30] Moreover, plaintiff has not alleged that defendant PSC was motivated by a "racial, or perhaps otherwise class-based, invidiously discriminatory animus" to deny her equal protection of the laws.[31] Plaintiff states that at various times unspecified persons have grouped her with classes to which she does not admit membership, such as "blacks," "gays" and "atheists," but she nowhere alleges that the PSC ever referred to, or considered her to belong to, such a class or that it actually conspired to discriminate against her because of her sex, race, religion or any other characteristic that might trigger the application of section 1985. Thus, plaintiff fails to state a claim against the PSC under section 1985.

In addition, the PSC has submitted affidavits in support of its motion for summary judgment that not only disclaim participation in any conspiracy but set forth facts in explanation of its actions in connection with plaintiff's complaints against the BHE. For example, the decision not to press plaintiff's discrimination claim during arbitration is averred to have been based on provisions of the union's contract with CUNY that preserve the confidentiality of the deliberations of academic committees passing upon appointments, reappointments, promotions and other matters. Indeed, subsequent to the arbitration of plaintiff's claims, the PSC litigated in the state courts the issue of whether the union contract precluded investigation into committee deliberations when a discriminatory dismissal was alleged, and the New York Court of Appeals held that an arbitrator's interpre-

---

**30.** See cases cited in note 16 *supra*.

**31.** See note 29 *supra*.

tation of the contract to this effect would not be overturned.[32] The PSC's good faith in not pressing the claim is further borne out by a document signed by plaintiff agreeing to withdraw a charge she had brought against the PSC before the New York State Public Employment Relations Board and recognizing that the PSC's failure to pursue her discrimination claim "constituted a recognition of limitations imposed by [the union] contract and in arbitration proceedings." Plaintiff's submissions in opposition to the motion for summary judgment fail altogether to controvert the PSC's good faith in not submitting the discrimination charge to arbitration and also fail to raise a material issue of fact concerning whether the PSC participated in a conspiracy against her. Indeed, far from setting "forth specific facts showing that there is a genuine issue for trial,"[33] plaintiff's affidavit at most charges the PSC with a negligent or even innocent failure to prosecute her case vigorously, which does not give rise to a federal claim. Plaintiff's only statement in opposition to the summary judgment motion that relates to the section 1985 claim is: "I further allege that PSC grievance counselor DeMealas acted in conspiracy with BHE, Edel, and a number of other persons, among them possibly Judith P. Vladeck and/or Steven Vladeck [lawyers who represented plaintiff in connection with an EEOC grievance]."[34] This conclu-

sory statement cannot operate to raise a material issue of fact so as to require denial of summary judgment. Neither does the fact that plaintiff appears pro se and that her complaint is grounded on conspiracy preclude the granting of the motion.[35] Thus, were dismissal of plaintiff's complaint against the PSC not granted, the PSC would nevertheless be entitled to summary judgment on the section 1985 claim.

Much of the above, of course, applies equally to any claim plaintiff may be said to have asserted under Title VII of the Civil Rights Act. Plaintiff's complaint does not contain sufficient allegations that the PSC discriminated against her on the basis of her race, color, religion, national origin or sex, nor does plaintiff provide any factual averments to that effect in opposition to the summary judgment motion.

█ It has been held that a union's breach of its duty of fair representation may render it liable under 42 U.S.C., section 2000e–2,[36] but a breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith.[37] Plaintiff, however, has neither specifically alleged that nor provided affidavits or other evidence to the effect that the PSC did not represent her in good faith or that it discriminated against her.[38] In sum, the

---

**32.** *Professional Staff Congress/City University of New York v. Board of Higher Educ.,* 39 N.Y.2d 319, 383 N.Y.S.2d 592, 347 N.E.2d 918 (1976).

**33.** Fed.R.Civ.P. 56(e).

**34.** In her affidavit in opposition to the summary judgment motion, plaintiff refers to her lengthy "in camera statement" as containing material that gives rise to a material issue of fact concerning her conspiracy claim against the PSC. This so-called "in camera statement," however, does not refer to the PSC at all; rather, it deals exclusively with events that transpired prior to the time PSC became involved with plaintiff or with events totally unrelated to actions taken by the PSC.

**35.** *See* Fed.R.Civ.P. 56(e); *Morgan v. Sylvester,* 125 F.Supp. 380, 389–90 (S.D.N.Y.1954), *aff'd,* 220 F.2d 758 (2d Cir. 1955).

**36.** *E. g., Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 478 F.2d 979, 988–89 (1973); *United Rubber, etc., Workers v. NLRB,* 368 F.2d 12, 24 (5th Cir. 1966); *cert. denied,* 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967).

**37.** *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Jackson v. Trans World Airlines, Inc.,* 457 F.2d 202 (2d Cir. 1972); *Simberlund v. Long Island R. R.,* 421 F.2d 1219, 1225 (2d Cir. 1970); *Desrosiers v. American Cyanamid Co.,* 377 F.2d 864, 868 (2d Cir. 1967); *Bartels v. New York Lithograph & Photo-Engravers Union No. One-P,* 306 F.Supp. 1266, 1271 (S.D.N.Y.1969), *aff'd,* 431 F.2d 1205 (2d Cir. 1970).

**38.** *See* cases cited in note 37 *supra; Williams v. General Foods Corp.,* 492 F.2d 399 (7th Cir. 1974); *Lusk v. Eastern Prods. Corp.,* 427 F.2d 705, 708 (4th Cir. 1970); *Slagley v. Illinois Central R. R.,* 397 F.2d 546, 552 (7th Cir. 1968).

PSC is entitled to dismissal of plaintiff's claim that it breached its duty of fair representation and of any claim plaintiff may have asserted under Title VII.

## MOTION BY VLADECK DEFENDANTS FOR SUMMARY JUDGMENT

Defendants Judith P. Vladeck and her law firm, Vladeck, Elias, Vladeck & Lewis, move for summary judgment dismissing the complaint against them. The plaintiff's allegations against these "Vladeck defendants" may be summarized as follows. Plaintiff first charges that her lawyers, the Vladeck defendants, misplaced and misprocessed an EEOC grievance that they were to file for her and that, as a result, EEOC consideration of plaintiff's claims was delayed. Plaintiff alleges, "on information and belief," that this delay was "willful and part of a cover-up conspiracy." Judith Vladeck is alleged to have suppressed evidence and discouraged, bribed or otherwise prevented unspecified witnesses from testifying for plaintiff in various proceedings, again as part of a conspiracy to deprive plaintiff of her rights. Finally, plaintiff claims that the Vladeck defendants, without her authorization, freely exchanged confidential information concerning her with the BHE and the PSC. This action allegedly had a detrimental effect on her litigation against the BHE and the PSC.

Plaintiff's claims thus fall into two categories: first, that the Vladeck defendants were guilty of professional malpractice in their handling of plaintiff's EEOC grievance against CUNY, and, second, that those defendants participated with others in a conspiracy to interfere with plaintiff's civil rights. The former claim is urged upon the Court as being pendent to the latter claim; the latter claim, insofar as it is legally cognizable, must be understood to assert

violations of section 1985 of the Civil Rights Act.

Plaintiff's federal claim, however, fails to withstand the motion for summary judgment. Neither plaintiff's complaint, nor her affidavits nor her lengthy "in camera statement" submitted to the Court set forth facts from which the existence of a conspiracy to deprive plaintiff of her civil rights could be inferred.[39] Nor is a single concrete fact alleged or averred that could tie the Vladeck defendants into such a conspiracy. The shortcomings of the complaint would warrant dismissal upon a motion to dismiss, and when they are in no way remedied by plaintiff's submissions in opposition to summary judgment, the defendants are entitled to be granted the relief requested. This is especially so where, as here, the defendants have come forward with particular facts rebutting the allegations in plaintiff's complaint.[40]

■ Although plaintiff has raised factual issues with respect to whether the Vladeck defendants undertook to represent her in connection with the filing of her EEOC grievance and whether the delay in filing that grievance constituted malpractice, the Court declines to take jurisdiction over this state law claim because plaintiff's complaint fails to present a federal claim of some substantiality arising out of the same nucleus of operative facts as the alleged malpractice.[41]

## EEOC DEFENDANTS' MOTION TO DISMISS

Seven employees of the EEOC who handled plaintiff's grievance against CUNY have moved for dismissal of the complaint against them for failure to state a claim upon which relief can be granted. Although plaintiff alleges that these individually named defendants "conspired with

---

**39.** *See* cases cited in note 16 *supra.*

**40.** *See* note 35 *supra.*

**41.** *Hagans v. Lavine,* 415 U.S. 528, 536–43, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Edelman v. Jordan,* 415 U.S. 651, 653 n. 1, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *United Mine Workers v.*

*Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Nolan v. Meyer,* 520 F.2d 1276, 1278 (2d Cir.), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975); *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1015 (2d Cir. 1975).

John/Jane Doe, other federal employees or members of organized crime or friends of theirs to whom they owe allegiance, to fail to prevent a conspiracy to interfere with [her] civil rights," she is, in reality, attacking the determination of lack of reasonable cause handed down by the EEOC on her various grievances. Thus, plaintiff's amended complaint charges that the EEOC's determinations were "in neglect of law and weight of evidence" and "further grossly inaccurate with regard to the statement of recorded facts, and handed down without obtaining testimony from Plaintiff's voluntary witnesses."

In support of her sweeping charges of conspiracy, plaintiff refers only to the "voluntary acts" of the individual employees "done directly to suppress evidence, discourage, bribe or otherwise prevent witnesses from testifying for Plaintiff, to alter or misplace records, neglect professional duties and their timely performance" and to unspecified "involuntary acts" also alleged to have violated her federal statutory and constitutional rights.

Even read liberally, the complaint contains no allegations that would sufficiently notify the EEOC employees of any claim plaintiff might have against them. Once again, despite specific directives to plaintiff in the dismissal of her original complaint, she has failed totally to satisfy the standards established by our Court of Appeals for alleging a conspiracy under the Civil Rights Act.[42] She has failed to set forth facts showing any intentional and purposeful deprivation of her rights or indicating the existence of a conspiracy in violation of section 1985. Indeed, plaintiff is attempting, through vague, speculative and conclusory allegations of a conspiracy, to obtain a review of the EEOC proceedings. That a plaintiff is willing to tack charges of a conspiracy onto allegations that the EEOC improperly found no basis to her grievances cannot suffice to create a right of review in the federal courts.[43] Because the Court has given plaintiff ample opportunity to plead properly any charges she may have against the EEOC defendants, her amended complaint against them is dismissed with prejudice.

## MOTIONS BY PRINCETON UNIVERSITY AND MASSACHUSETTS INSTITUTE OF TECHNOLOGY TO DISMISS THE COMPLAINT AGAINST THEM

Princeton University and Massachusetts Institute of Technology have also moved for dismissal of the complaints against them on the grounds that plaintiff has failed to state a claim upon which relief can be granted. In her complaint in 75 Civ. 3840, plaintiff alleges on "information and belief" that the philosophy faculties of Princeton and Massachusetts Institute of Technology accepted her for matriculation in their doctoral programs in 1975 and 1976, but that the administrations of these schools, complying with directives of unspecified federal agencies, rejected her applications even though she was the "most qualified applicant under affirmative action" programs. These actions are alleged to have been taken in furtherance of the widespread conspiracy to deprive plaintiff of her civil and constitutional rights, and they are asserted to have been acts of sexual and racial discrimination.

Again, however, plaintiff has failed to plead with even minimal particularity facts that would indicate the existence of a conspiracy against her or the involvement of the defendant educational institutions in such a conspiracy.[44] In addition, plaintiff's conclusory allegations that her rejections were the product of sexual or racial discrimination are wholly unsupported by any factual averments.[45] Indeed, plaintiff ap-

---

42. See cases cited in note 16 *supra.*

43. See *Morgan v. Sylvester,* 125 F.Supp. 380, 387 (S.D.N.Y.1954), *aff'd,* 220 F.2d 758 (2d Cir. 1955).

44. See cases cited in note 16 *supra.*

45. See cases cited in note 11 *supra.* Plaintiff's allegations against Princeton and Massachu-

pears inferentially to concede that Princeton and Massachusetts Institute of Technology were accepting females under affirmative action programs, and thus that she was not rejected so much on account of her sex as in spite of it. Moreover, nothing in the complaint would indicate that the decisions not to accept her into the doctoral programs were due to some "racial, or perhaps otherwise class-based, invidiously discriminatory animus." [46] In her papers in opposition to the dismiss motions, plaintiff baldly asserts that she is entitled to judicial review of the question whether any discrimination prompted her rejections. But her mere suspicion of discrimination, not supported by any allegation of facts tending to substantiate it, cannot serve to withstand a motion to dismiss. Parties, whether government, corporations or individuals, should not be subjected to the heavy burdens of litigation unless there is a basis for the assertion of a claim.[47] Accordingly, the claims against Princeton University and Massachusetts Institute of Technology are dismissed with prejudice.

In sum, the complaints are dismissed against all the defendants in all actions except as to the defendants Edel, Newton, Kibbee, Koslow, Myers, Elias, Thornton, Hong, McLaughlin, Proshansky and Hillerbrand in actions 75 Civil 3840 and 75 Civil 4913.

---

setts Institute of Technology charge them with violations of 42 U.S.C. § 1985(3) and, insofar as her rejections allegedly denied her equal protection of the laws, with violations of 42 U.S.C. § 1983. The complaint fails to state a claim under the Civil Rights Act on either theory, and it contains no allegations that would give rise to a cause of action based on denial of any constitutional right other than that of equal protection or based on any other statutory provisions.

**46.** *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see* cases cited in note 12 *supra.*

**47.** *Morgan v. Sylvester,* 125 F.Supp. 380, 390 (S.D.N.Y.1954), *aff'd,* 220 F.2d 758 (2d Cir. 1955).