[Crim. No. 3907. Fourth Dist., Div. One. Nov. 2, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
LACY BROWN, Defendant and Appellant.

## COUNSEL

Fred E. Corbin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Alexander B. McDonald, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**—Lacy Brown (defendant) appeals from a judgment imposing sentence for the crime of forcible rape, of which he was found guilty by a jury. Imposition of sentence for the crime of incest, of which he was also found guilty in the same trial, was suspended for a period of five years. Both crimes were committed by the same act.

Defendant contends he may not be convicted of both crimes. The law is otherwise. Defendant may not be sentenced for both crimes, since that would violate section 654 Penal Code. But neither offense is one necessarily included in the other under their definitions, and the charging language of the information as to neither count includes the elements of both offenses, so that the rule of *People* v. *Marshall,* 48 Cal.2d 394 [309 P.2d 456], does not apply.

Defendant's other contentions are based upon the entry by the police into the house, and into defendant's bedroom, without an arrest or search warrant and without having complied with the requirements of Penal Code section 844. Defendant made a motion to suppress all evidence that

flowed from the entry of the police into the bedroom, which was heard on the trial date before a jury was selected and which was denied.

The evidence sought to be excluded was the testimony of Officer Grodt, of defendant's son, and of a second police officer, Weinheimer, as to what they saw and heard in defendant's bedroom, and what the officers heard defendant say at the police station. No search was made; no prosecution was instituted for any crimes but those of which defendant was convicted here, and no physical evidence seen was offered or received.

In support of the police action, the prosecution introduced the following evidence:

On April 3, 1969, defendant, with seven of his eight children, lived in the city of Westminster in Orange County. The mother of the children was not in the home.

Richard Grodt was a detective on the Westminster police force. In June of 1968 he had had occasion to investigate the home of defendant to determine its fitness as a place for the children to live, the only question being the physical fitness of the premises. On March 10, 1969 he had had conversation with Royal Allen, described as the family probation officer, who told Grodt that Allen had heard there was sexual activity going on between defendant and P., his 19-year-old daughter whom Grodt knew to be suffering from cerebral palsy and to be mentally retarded. Prior to April 4 Grodt had been in the Brown home on at least five occasions, most recently on April 2 when he had gone there during the daytime in the company of defendant's son Delbert, aged 13, and had found Donald, another son, at home. He had wanted to talk to Donald privately and Donald and he had gone outside and had a conversation in Grodt's car. Grodt had seen Donald at the house on two earlier occasions.

At about 11 p.m. of April 3, Donald was working in the garage at home when Delbert came in and told him, in the vernacular, that defendant had said when everybody was asleep he was going to take P. and have carnal knowledge of her.

Donald then put his things away and went to bed, removing his shoes, but with his shirt and trousers on. About 10 minutes later he heard his father, the only one up, walking from his bedroom to the bathroom and back. Delbert then told Donald he had seen their father take P. into the father's room. In a few minutes 10-year-old Marilyn came into the bedroom where the two boys were and said that her father and P. were in the father's

bedroom.[1] Donald then went out the window, walked to a pay telephone booth on the Tic Toc Market parking lot, called the police station, told his story, asked for Sergeant Grodt and was told Grodt was at home but would be at the Tic Toc Market in 15 minutes.

Grodt was called at his home, was told of Donald's statement, went to the station for a car, proceeded to the market parking lot, met Donald, heard his account, and with him proceeded to the Brown home where a uniformed officer had also arrived.

The statement made directly to Grodt at the parking lot by Donald was that at about 11 p.m. defendant came to the garage where Donald was and told everybody to go to bed; as Donald was going to bed Delbert came in and told him Delbert had overheard a conversation between defendant and P. in which defendant said as soon as all the kids were in bed he was going to come and get her and have carnal knowledge of her; Donald went to bed with his clothes on; it was arranged that either Donald or Delbert should report to the other if he saw or heard the father go into P.'s bedroom to get her; Donald heard his father walking around and going into P.'s bedroom, heard P. sobbing a little or crying "No, no," and his father walking into the other room.

### DISCUSSION OF THE MERITS OF THE MOTION TO SUPPRESS

The argument in support of defendant's position questions that Donald could give the police consent to enter the house, and, if he could give such consent, that he could give consent to enter his father's bedroom; it questions also that the police had a right to rely on the information given Grodt by Donald which on the face of it was based on information received by Donald at second-hand. It is argued further that if the apparent consent given by Donald did not confer a right to enter either the house or bedroom, and particularly not to enter the bedroom, then the police were required to comply with Penal Code section 844 even if Donald's information gave probable cause to enter the house.

We observe preliminarily that if Grodt had any right to enter the house it was not because he had probable cause to make an arrest on the ground he had reliable information a felony had been committed.

However, he did have information which, if believed, would have per-

---

[1] In the trial Marilyn confirmed that she had been asked by P. to carry a message to her brothers and that she had given the message to Delbert, who confirmed having received it and having passed it on to Donald. When Delbert and Donald were in the bedroom together, Delbert looked through a hole in the door from which the knob had been removed and saw his father go into P.'s room and take her in the direction of his own room, the door of which could not be seen through the hole.

mitted him to enter the house and the bedroom with or without permission. That information was that a helpless child, physically and mentally impaired, was about to be, or might be in the process of being, violently and feloniously assaulted.

The walls of privacy and domestic security may protect some crimes from observation and prevention by all who are unarmed with a warrant or probable cause for arrest, or who, even when so armed, failed to demand admittance and to explain the purpose for which entry is sought. ■ But the rights of privacy and domestic security extend no impenetrable protective cloak against the prevention of a felonious assault upon a helpless victim whose right to physical and mental integrity outweighs the right of the aggressor to remain secure in his domestic sanctuary when used for such a purpose. "[T]he Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except . . . where the officers are justified in the belief that persons within are in imminent peril of bodily harm. . . ." (*Ker* v. *State of California,* 374 U.S. 23, 47 [10 L.Ed.2d 726, 746, 83 S.Ct. 1623, 1636].)

■ In *People* v. *Roberts,* 47 Cal.2d 374 [303 P.2d 721], the trial court found that the officers reasonably believed someone inside the apartment was in distress and in need of assistance and that they entered for the purpose of giving aid. Of that situation the Supreme Court held that an unannounced entry was permitted, saying: "Necessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for that purpose."

In *People* v. *Roberts, supra,* it is made clear that an entry for such a purpose may not be used as a pretext for an unauthorized search.

■ It is true that the reasonableness of the belief as to the existence of the exigent necessity to enter must be put to a searching test. If that test is met, there is no rule against the use of testimony of what was seen or heard in the attempt to prevent or interrupt the commission of the crime.

■ We have set forth the information Grodt possessed as to the character of the household and its members, the information he had from a probation officer working with the family, his acquaintance with them and particularly with Donald, his knowledge of the physical and mental condition of P., the urgency of the manner in which Donald's message was communicated, and the detail in which it was given, albeit based upon hearsay in its essential parts. All of that was sufficient to permit the trial court to hold that Grodt had reasonable cause to believe a felonious assault upon a helpless victim was about to be or was in process of being committed,

and that he might enter when admitted into the household by the member from whom he obtained the information and who accompanied him for the common purpose of preventing or interrupting such felonious assault. We do not hold that Donald could give an effective consent to a search of his father's house or to an entry for the purpose of making a search.

### THE OTHER EVIDENCE

At the Brown house Donald opened the front door and, followed by the police, entered the hall, which was in darkness, and turned on a light. They proceeded through the living room to another hallway and the door of defendant's bedroom which was closed. Grodt heard someone sobbing and crying within. Donald opened the door part way and encountered resistance from within. The police then took over and pushed open the door, after Grodt said, "It's the police." Grodt entered first turning on a light as he did so.

The explicit and detailed testimony of P., although contradicted by defendant, was sufficient to show that defendant had committed the crimes charged, and when interrupted by the noise at the door was engaged in committing them a second time. P. had made some attempt to evade her father's action and was subjected to physical restraint. What the police observed furnished some corroboration of P.'s testimony.

The acts of intercourse were against her will and painful to her. In addition to being mentally retarded and having cerebral palsy, she was crippled and had a bad heart. She was physically weak and had never been to school.

Defendant did not attempt to avoid the rape charge by claiming his daughter consented to the act, but denied that any sexual act occurred.

Sentence may not be imposed upon the conviction of incest. (Pen. Code, § 654.) When this decision becomes final, imposition of sentence imposed for incest shall be permanently stayed.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1970.