[Crim. No. 18531. Second Dist., Div. Two. Mar. 10, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
ERROL JOHNSON, Defendant and Respondent.

## COUNSEL

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, James L. McCormick, David J. Lafaille and David A. Sanders, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**HERNDON, J.—** The People appeal from the order of dismissal entered following the granting of respondent's motion to suppress evidence under Penal Code section 1538.5. We have concluded that these orders must be reversed.

The evidence received in the instant proceeding is undisputed and without conflict. The trial court's comments make clear that its decision was based solely upon its interpretation of the law relating to warrantless arrests, and entries made to effect such arrests, rather than on any determination not to credit the factual testimony of the arresting officers. Respondent does not contend to the contrary.

Officer Emil Drescher of the Los Angeles Police Department testified that at approximately 11:40 p.m. on the night of February 20, 1970, he and his partner responded to "a call . . . that a child was kidnapped." Arriving on the scene the officers were met by a woman, Gladys Morgan, who informed them "that two male Negroes forcibly removed her baby from her, striking her about the face, and that they got into a—I can't recall what kind of a car it is right now—but they went northbound on Hoover." Mrs. Morgan also gave the officers a detailed description of both men[1] and stated "[t]hat they were at this white house on the east side of the street of Hoover." She pointed out the exact house to the officers.

The officers approached the designated residence and knocked. When a voice within inquired, "Who is it?," Officer Drescher's partner said, "The police." Respondent opened the door and the officers observed that he was still wearing the black hat and pea coat described by the victim.

---

[1] "Q. How did she describe any of these individuals? A. The first was a male Negro, approximately five nine, and one forty, wearing a yellow shirt and blue pants, I believe. And the second was a male Negro, six two weighing a hundred and seventy-five pounds, wearing a black pea-coat and a black hat."

The characteristic odor of marijuana[2] was also noted. Officer Drescher's partner placed respondent under arrest in connection with the alleged kidnaping while Drescher proceeded to investigate the voices emanating from the next room. A search of respondent's person disclosed a bag of marijuana.

The kidnaped baby was subsequently discovered at another location in an unspecified manner and for reasons not disclosed by the record respondent was never prosecuted in connection with its abduction. In granting respondent's motion to suppress the contraband thus discovered, the court stated: "[T]his arrest was obviously illegal and in at least two respects. . . . The police didn't tell what they were going to do when they got there. They just barged in and made an arrest for kidnapping without making any investigation at all as to what the circumstances were. . . . They did not announce their purpose. . . . That's the essential element of a proper entry."

When the People correctly pointed out that the provisions of Penal Code section 844, dealing with forcible entries to effect an arrest, were wholly inapplicable in the instant case, the court twice stated, "I don't agree. That's not the law. . . . That is not my understanding of the law." The error in the court's interpretation and application of section 844 is plainly evident. As recently stated in *Mann* v. *Superior Court, supra,* 3 Cal.3d 1, 8-9: "Petitioners also contend that the officers' entry was illegal because they did not comply with the requirements of Penal Code section 844. That section provides that in making an arrest, 'a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.' *The section thus states the conditions which the police must comply with before making a forced entry.* Since the officers' entry here was consented to by persons present inside the house, *the section does not apply.* (Cf. *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 321-324 [82 Cal.Rptr. 348, 461 P.2d 628]; *People* v. *Baranko* (1962) 201 Cal.App.2d 189, 194 [20 Cal.Rptr. 139]; *People* v. *Chacon* (1963) 223 Cal.App.2d 739, 743 [35 Cal.Rptr. 799].)" (Italics added.)

 Although its decision was based primarily upon this legal error, it also appears that the court felt that the officers should have undertaken some more detailed investigation of the mother's report before moving promptly to locate the missing infant and to apprehend its alleged ab-

---

[2]The People did not urge this fact as a separate and sufficient basis for respondent's arrest. (Cf., however, *Mann* v. *Superior Court*, 3 Cal.3d 1, 7 [88 Cal.Rptr. 380, 472 P.2d 468].)

ductors. We cannot agree. While obviously there is always the remote possibility that the report of a mother that her child has been abducted may later prove to have been inaccurate, mistaken or untruthful, nevertheless the heinous and dangerous nature of the reported crime is such that responding officers should not be required to insist that the reporting mother "prove her case" in the street before acting in reliance upon her representations.

■ "A peace officer may arrest a person without warrant whenever he has reasonable cause to believe that the person whom he has arrested has committed a felony. ■ Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officer at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. (*People* v. *Talley,* 65 Cal.2d 830, 835-836 [56 Cal.Rptr. 492, 423 P.2d 564].)

■ "Although information provided by an untested informer or by an anonymous informer is not, without some showing justifying reliance, sufficient to justify an arrest (*People* v. *Talley, supra,* 65 Cal.2d 830, 835-836), information from a citizen who purports to be the victim of a robbery or an assault has been held sufficient even though his reliability has not been previously tested. (*People* v. *Gardner,* 252 Cal.App.2d 320, 324-325 [60 Cal.Rptr. 321]; *People* v. *Griffin,* 250 Cal.App.2d 545, 550-551 [58 Cal.Rptr. 707]; *People* v. *Wright,* 216 Cal.App.2d 866, 871 [31 Cal.Rptr. 432]; see *People* v. *Lewis,* 240 Cal.App.2d 546, 549-551 [49 Cal.Rptr. 579].) Such a person, who may expect to be called to testify after an arrest, and may be exposing himself to an action for malicious prosecution if he makes unfounded charges, is more than a mere informer who gives a tip to law enforcement officers that a person is engaged in a course of criminal conduct." (*People* v. *Hogan,* 71 Cal.2d 888, 890-891 [80 Cal.Rptr. 28, 457 P.2d 868].)

The concept that the need for swift action is a highly determinative factor in any evaluation of police conduct is neither new nor novel in this state. As early as 1894, our Supreme Court determined that the spectacle of one unknown man chasing another and crying "stop thief" was sufficient as a matter of law to supply probable cause for the arrest of the "accused."

"An officer who would refuse to arrest a person fleeing and pursued under the circumstances disclosed in this case, because the charge was not more direct and specific as to the commission of a felony, would be justly censurable for a neglect of official duty. In considering this question of probable cause upon the part of the [officer] to arrest the deceased, we are to look only at the facts and circumstances presented to him at the time he was required to act. The [officer] did not recognize the deceased before he fired,

and the fact that the latter was an innocent and respectable citizen, and who may have been fleeing from an assailant, cannot be allowed to affect the question we are now discussing." (*People* v. *Kilvington,* 104 Cal. 86, 93 [37 P. 799]; see also, *People* v. *Sandoval,* 65 Cal.2d 303, 310 [54 Cal. Rptr. 123, 419 P.2d 187], dealing with a different factual situation but one that also "indicated the need for swift action.")

An equally relevant consideration is the seriousness of the offense allegedly committed. Although expressed in another context, Justice Jackson's observations in his dissenting opinion in *Brinegar* v. *United States,* 338 U.S. 160, 183 [93 L.Ed. 1879, 1894, 69 S.Ct. 1302], are particularly apposite to the crime here considered: "If we assume, for example, that a child is kidnaped and the officers throw a roadblock about the neighborhood and search every outgoing car, it would be a drastic and undiscriminating use of the search. The officers might be unable to show probable cause for searching any particular car. However, I should candidly strive hard to sustain such an action, executed fairly and in good faith, because it might be reasonable to subject travelers to that indignity if it was the only way to save a threatened life and detect a vicious crime. But I should not strain to sustain such a roadblock and universal search to salvage a few bottles of bourbon and catch a bootlegger."

We feel that a man who has been accurately described in detail by the assaulted mother of an abducted child is not unreasonably subjected to indignity when he is arrested after being found within the specific residence pointed out by the victim. Moreover, the nature of the crime, the time, and the setting of respondent's apprehension are not without significance in determining whether or not an officer should immediately restrain and "arrest" an accused before offering him an opportunity to present his version of the incident. Certainly it was not improvident of the officers to promptly handcuff respondent prior to proceeding into adjoining rooms from which the voices of others were emanating. One nighttime assault had already occurred. The outnumbered officers could reasonably act to insure that they were not the victims of another attack.

Of course, as respondent correctly urges, every report of criminal activity by a "citizen-victim" would not supply probable cause for an arrest in every instance. Each case must be decided within its own factual context. Similarly, where a trier of the fact applies a correct interpretation of the law to a disputed factual situation, or one from which alternative interpretations might reasonably be drawn, its decision is binding on appellate review. However, we are not confronted with such a determination here.

In the present case the court expressly erred concerning the propriety of the manner in which respondent was arrested, an error which was inter-

woven into its comments on the sufficiency of the officer's prior investigation of the reported crime itself. The facts here presented are not disputed and no evidence was presented which would have tended to suggest that the mother's condition, or the nature of her report, was such as to have rendered the officer's reliance thereon unreasonable.

The order of dismissal is reversed.

Roth, P. J., and Fleming, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 6, 1971. Peters, J., was of the opinion that the petition should be granted.