[Crim. No. 28598. Second Dist., Div. Five. Jan. 5, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MICHAEL PAYNE, Defendant and Appellant.

COUNSEL

Andelson & Andelson and Arlen H. Andelson for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT\***—David Michael Payne was convicted by plea of two counts of child molestation (Pen. Code, § 288). Prior thereto, he unsuccessfully brought a motion pursuant to Penal Code section 1538.5. Suspended state prison sentences were imposed and probation was granted on certain terms and conditions, inter alia, the service of one year in the county jail. As authorized by Penal Code section 1538.5, subdivision (m), he appeals contending that the suppression motion was erroneously denied.

Preliminarily we note that "[a] proceeding pursuant to section 1538.5 is one in which factual issues are resolved by the court sitting as a finder of fact. [Citation.] 'In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' [Citation.]" (*People* v. *Rios,* 16 Cal.3d 351, 357 [128 Cal.Rptr. 5, 546 P.2d 293].)

On various occasions, Steve Scott, a reliable informant, told Police Officer Lloyd Martin ". . . that a male by the name of David Payne was a child molester, that David Payne lived in Pasadena near the—or next to the Mercedes-Benz dealership, that Mr. Payne was a photographer, that he had photographed kids in the nude, that he had a bedroom and a photo lab in his garage, that he committed acts of child molest with kids in this bedroom, that Mr. Payne had an orange Datsun pickup, and the informant gave me a telephone number which he said was the residence of Mr. Payne."[1] Scott described appellant's modus operandi as follows: ". . . Dave Payne would bring the juveniles to his home, that he did not wish his mother or his housekeeper to know that the juveniles were there, and that prior to going into his driveway, the juvenile would secrete himself somewhat in Payne's vehicle, and that Payne would get out, leave his door open on his vehicle, go into the house and then the juvenile would go into the bedroom while Payne was inside."

A surveillance of appellant and his residence was set up. On September 17, 1974, appellant was observed to drive his orange pickup[2]

---

*Before Stephens, Acting P. J., Ashby, J., and Hastings, J.

[1]The telephone number ". . . was registered to a Joan Payne at 45 North San Marino in Pasadena."

[2]The police had determined that this vehicle was registered in appellant's name.

to various locations in the City of Pasadena. He finally pulled into a driveway at the intersection of Orange and Montecito Streets. He exited the vehicle for a brief period. Upon his return thereto he was accompanied by a male juvenile (later identified as David S.) who was estimated to be between 10 and 12 years of age. After stopping at a grocery store, appellant and David S. went to appellant's residence. Appellant entered the main portion of the residence while David went into the garage. Appellant then entered the garage.

Officer Martin became "apprehensive" about ". . . the welfare of the juvenile" and ". . . thought that a crime was being committed . . . ." He testified, "Agent McPherson and myself, along with other members of the Los Angeles Police Department, went to the bedroom door of the garage. I observed Officer McPherson knock on the door, identify himself as a police officer, stated that he was there to conduct a child molesting investigation. I heard McPherson do the same [thing] over again, repeating the same thing. From the inside of the location there was a male voice that stated, 'What do you want?' [¶] Against Officer McPherson stated that he was a police officer there conducting a child molest investigation, to open the door. There was no response. I heard movement inside the location, at which time Agent McPherson and myself forced the door at the bedroom." David S., only partially dressed, was on the bed located in the garage-bedroom. Appellant was placed under arrest. David S. was taken into custody. Thereafter, David S. detailed the various sexual activities that he and appellant had been engaging in for an extended period of time. He also indicated that another juvenile, 13-year-old Andy C. had also engaged in sexual activities with appellant.[3]

The suppression motion was submitted, in part, on the testimony taken at the preliminary hearing where the magistrate determined, ". . . that under the doctrine of the Roberts case [*People* v. *Roberts,* 47 Cal.2d 374 (303 P.2d 721)], the cases that follow that line of authority justifying entry on emergency, that the officers had the right to enter, and the objection to the introduction of further evidence at this time is overruled." In denying the suppression motion in the superior court, the court concluded, "I concur with the magistrate . . . that the entry was . . . based upon the doctrine of necessity and emergency . . . ."

■ In the seminal California case of *People* v. *Roberts, supra,* "[t]he trial court found [as in the instant case] that the officers reasonably

---

[3]Both David S. and Andy C. testified at the preliminary hearing about their sexual activities with appellant which included oral copulation and sodomy.

believed that someone inside the apartment was in distress and in need of assistance and that they entered for the purpose of giving aid. ■ Necessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for the purpose. [Citations.]" (*People* v. *Roberts, supra,* p. 377.)

In *People* v. *Roberts, supra,* while conducting a burglary investigation the police went to an apartment, knocked on the door and received no response. "They heard several moans or groans that sounded as if a person in the apartment were in distress . . ." and entered to investigate and render aid to a person in need thereof (*People* v. *Roberts, supra,* pp. 376, 380). Our Supreme Court held that the ". . . officers did not act unreasonably or in violation of defendant's constitutional rights." (*People* v. *Roberts, supra,* p. 380.)

The "emergency doctrine" also has been held to justify police conduct in a variety of situations which otherwise would have infringed constitutional restraints. In *People* v. *Johnson,* 15 Cal.App.3d 936 [93 Cal.Rptr. 534], where the police were investigating a report of a mother that her child had been abducted, the court said, ". . . the heinous and dangerous nature of the reported crime is such that responding officers should not be required to insist that the reporting mother 'prove her case' in the street before acting in reliance upon her representations." (*People* v. *Johnson, supra,* p. 940.) Likewise, in *People* v. *Brown,* 12 Cal.App.3d 600 [90 Cal.Rptr. 881], where ". . . information was that a helpless child, physically and mentally impaired, was about to be, or might be in the process of being, violently and feloniously assaulted," the court said, ". . . the rights of privacy and domestic security extend no impenetrable protective cloak against the prevention of a felonious assault upon a helpless victim whose right to physical and mental integrity outweighs the right of the aggressor to remain secure in his domestic sanctuary when used for such a purpose." (*People* v. *Brown, supra,* p. 605.)

■ In the instant case the fortuitous, and only subsequently determined, fact that the suspected crime was occurring with the assent of its child-victim, a fact which retroactively explained the lack of any overt indicia of ongoing harm (e.g., a scream for help), did not make the situation any less of an "emergency." The police officers reasonably believed that David S. was in need of their assistance. (*People* v. *Roberts, supra,* 47 Cal.2d 374, 477.) The potential crimes for which appellant was being investigated were particularly "heinous and dangerous." (*People* v.

*Johnson, supra,* p. 940.) David S.'s ". . . right to physical and mental integrity [simply] outweigh[ed] the right of [appellant] to remain secure in his domestic sanctuary . . . ." (*People* v. *Brown, supra,* p. 605.)

Since we have concluded that the officers did not act unreasonably or in violation of defendant's rights (*People* v. *Roberts, supra,* p. 380) we need not consider appellant's contention that the testimony of the victims was the "fruit of the poisonous tree." (*Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].)

The judgment (order granting probation) is affirmed.

A petition for a rehearing was denied February 3, 1977.