Clascedar GREENE, Plaintiff,

v.

Detective Richard BROWN, Individually, and as Agent for the City of New York Police Department, Mary Edwards, Individually and jointly with Robert Lee Edwards and Det. Richard Brown, and the City of New York Police Department, and Robert Lee Edwards, Defendants.

No. 79 Civ. 1320.

United States District Court,
E. D. New York.

March 23, 1982.

Clascedar Greene, pro se.

Frederick A. O. Schwarz, Jr., Corp. Counsel, New York City (Joseph Lauer, Gary Tarnoff, Larraine Mohr, New York City, of counsel), for City defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an action alleging violations of the plaintiff's civil rights (42 U.S.C. §§ 1983, 1985), as well as violations of New York law, specifically false arrest, malicious prosecution and defamation. The plaintiff asserts that she was arrested unlawfully and that this arrest was effectuated pursuant to a conspiracy entered into by a New York City Police Officer, Detective Richard Brown, Mary Edwards, plaintiff's ex-landlord, and her son, Robert Edwards.[1]

The City defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons provided below, this Court finds there are no genuine factual issues, and that Detective Brown and the New York City Police Department are therefore entitled to summary judgment.

### I. *The Facts*

The undisputed facts are as follows. In April, 1978, the plaintiff was a tenant of Mary Edwards. On April 25, 1978, Mary Edwards requested that the plaintiff vacate her premises for non-payment of rent. Shortly thereafter, the plaintiff's belongings were put out on the street. At approximately 2:15 a. m. on April 26, 1978, Officer Blackshear of the 78th Police Precinct responded to a complaint lodged by Mary Edwards that Ms. Greene had threatened "to get even with her" and had thrown a bottle of gasoline through Mary Edwards' window.

At approximately noon, on April 26, 1978, Detective Richard Brown, and his partner, Detective Frederick Simon, came to speak to Mary and Robert Edwards and to other tenants in the Edwards' home. Mary Edwards repeated what she had told to Officer Blackshear earlier, and further stated that she had seen Ms. Greene outside her home at about 2:30 a. m. that morning, and that a few minutes later a bottle of gasoline was thrown through her window. She then went to the window and saw Ms. Greene running away.

According to the affidavits submitted by both Detectives Brown and Simon, an inspection of the Edwards' home revealed a large rock on the floor, a broken window, a bottle with a heavy smell of gasoline, a stain on the bed, and a strong odor of gasoline throughout the apartment.

The detectives also stated that some of the tenants indicated they had seen Ms. Greene outside the Edwards' house harassing the Edwards. On April 28, 1978, another telephone complaint was lodged by Mary Edwards concerning an additional rock-throwing incident in which Ms. Greene was allegedly involved. During the next week, Detective Simon attempted to locate Ms. Greene, however, his search was unsuccessful.

On May 18, 1978, a man who said he was living in the Edwards' home called to advise Detective Brown that he could find Ms. Greene at the Long Island Railroad station on Atlantic Avenue in Brooklyn.[2] The caller further stated that he knew Ms. Greene's location because Ms. Greene had requested

---

1. Mary Edwards and Robert Edwards have failed to answer the complaint and are in default. In any event since they did not act under color of state law, no claim under 42 U.S.C. § 1983 would lie against them. *Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

2. The record reveals an inconsistency in the statements made by Detective Brown with respect to the identity of the individual who told the Detective where Ms. Greene could be locat-

ed. Both Detective Brown's affidavit (¶ 10 at p. 3), and his deposition testimony (pp. 34, 50) indicate that the individual identified himself by name and stated he was a tenant in Mary Edwards' home. The arrest memorandum filed by Detective Brown on April 28, 1978, states, however, that the individual who talked to Detective Brown was an "unidentified male caller." Government's Notice of Motion, Exhibit D.

that he serve legal papers on Mary Edwards and that Ms. Greene was awaiting a telephone call confirming the service of the papers. Lastly, he told Detective Brown that Ms. Greene would be wearing a brown coat and an orange and brown scarf.

Detective Brown went to the railroad station, accompanied by two undercover officers, to apprehend Ms. Greene. Upon arriving at the station, the officers saw a woman who matched the caller's description sitting in a telephone booth. The detective then identified himself as a policeman and showed Ms. Greene his badge. After Ms. Greene identified herself and indicated that she knew Mary Edwards, Detective Brown placed her under arrest on charges of attempted arson, reckless endangerment, criminal mischief and harassment.

Detective Brown then forcibly removed Ms. Greene from the telephone booth, flagged down a passing police car and took Ms. Greene to the 78th precinct for booking. This forcible removal was necessitated as Ms. Greene did not believe the Detective's representations that he was a police officer. While Ms. Greene was at the precinct, Mary Edwards came to the station and signed a formal complaint.

Ms. Greene was arraigned the next day and was held on $250 bail which she was unable to post. An indictment charged Ms. Greene with four counts, two counts of criminal mischief in the fourth degree and two counts of harassment.[3] On August 15, 1979, a hearing was held before Judge Fuchs in the Brooklyn Criminal Court. Over objections of the Assistant District Attorney, Judge Fuchs dismissed all four counts "in the interests of justice" pursuant to Section 170.40 of the New York State Criminal Procedure Law. The dismissal was ordered by Judge Fuchs because he had determined that even if Ms. Greene were found guilty on all four counts, he would not sentence her to any additional time since Ms. Greene has already been incarcerated for 100 days pending trial.

## II. The Law

### A. Conspiracy

The requirements for a cause of action under 42 U.S.C. § 1985 are twofold. First, the plaintiff must establish that there was a conspiracy to violate her constitutional rights. Second, that there be some racial or other class-based discriminatory animus behind the conspirators' actions. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Morpurgo v. Board of Education in City of New York*, 423 F.Supp. 704, 711 (S.D.N.Y.1976). The plaintiff's complaint is devoid of any such allegations.

All that is presented are vague and conclusory statements concerning some ubiquitous conspiracy in which Detective Brown is alleged to be a member. Such statements are insufficient to state a claim under the civil rights laws. *Griffin v. Breckenridge*, 403 U.S. at 102, 91 S.Ct. at 1798; *Powel v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972); *Morpurgo v. Board of Higher Education in City of New York*, 423 F.Supp. at 711. Judge Weinfeld's findings in *Morpurgo* are equally applicable here:

> Although plaintiff has made some minimal effort to set forth the interrelationships of the alleged co-conspirators and the parameters of the conspiracy, she has done so by way of freewheeling and speculative allegations and has failed . . . to allege any facts that could give rise to a reasonable inference of a conspiracy. *Id.* (footnotes omitted).

### B. The Police Department

The complaint reflects no Police Department policy, regulation or custom which can be said to have violated the rights of the plaintiff. With respect to a City or a municipal department, the plaintiff must plead facts which show that a City or departmental policy or custom directly caused the plaintiff's constitutional violations. *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980).

---

**3.** The Grand Jury did not indict Ms. Greene on the attempted arson charge.

*See Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) ("the touchstone of the § 1983 action against a government body is an allegation that official policy is *responsible* for a deprivation of rights protected by the Constitution") (emphasis added). In its recent examination of municipal liability under § 1983 in light of *Monell,* the Second Circuit enunciated the following two-pronged test which is applicable to the instant action:

> [I]n order for a governmental entity to be liable "for its own violations, ... the plaintiff in a § 1983 action bears the burden of showing first that the governmental entity maintained or practiced an unconstitutional or unlawful "policy" or "custom," ... and second that that policy or custom "caused" or was the "moving force" behind the violation.

*Dominguez v. Beame,* 603 F.2d at 337.

Here, contrary to the conspiracy allegations, the complaint does not even set out conclusory allegations regarding the Police Department's responsibility. Plaintiff has failed to meet her burden under both prongs of the Second Circuit test, and accordingly, does not state a claim against the Police Department under § 1983.

### C. *The Police Officer*

■ The plaintiff has also sued the police officer who arrested her. Whatever may be her state tort remedies against the officer,[4] this court has jurisdiction to hear only her claim that the officer violated her constitutional rights under color of state law. No such violation is demonstrated.

■ If probable cause to arrest is established, a plaintiff may not recover for a violation of civil rights arising out of the arrest. *Terket v. Lund,* 623 F.2d 29 (7th Cir. 1980); *Jaroslawicz v. Seedman,* 528 F.2d 727, 732 n.3 (2d Cir. 1975); *Bivens v. Six Unknown Named Agents of Federal*

*Bureau of Narcotics,* 456 F.2d 1339, 1347–48 (2d Cir. 1972) (on remand). This is true even if the police had time to get an arrest warrant. *United States v. Watson,* 423 U.S. 411, 415, 96 S.Ct. 820, 823, 46 L.Ed.2d 598 (1976). The dispositive question, therefore, is whether Detective Richard Brown had probable cause to arrest the plaintiff. I find that he did.

■ Section 140.10(1)(b) of the New York Criminal Procedure Law provides that a police officer may arrest a person for "a crime when he has reasonable cause to believe that such person has committed such crime, whether in his presence or otherwise." "Reasonable cause," as used in the statute, is substantially the same as "probable cause" within the meaning of the Fourth Amendment. *Wong Sun v. United States,* 371 U.S. 471, 478 n.6, 83 S.Ct. 407, 412 n.9, 9 L.Ed.2d 441 (1963); *United States ex rel. Gonzales v. Follette,* 397 F.2d 232, 234 n.21 (2d Cir. 1968); *People v. Wharton,* 60 A.D.2d 291, 400 N.Y.S.2d 840 (1977). The applicable standard for probable cause is that "probable cause to arrest exists when an officer has knowledge of facts and circumstances 'sufficient to warrant a prudent man in believing' that an offense is being or has been committed." *United States v. Rueda,* 549 F.2d 865, 870 (2d Cir. 1977), quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). *See United States v. Agapito,* 620 F.2d 324, 332 (2d Cir. 1980); *People v. Smith,* 44 N.Y.2d 613, 622, 407 N.Y.S.2d 462, 467, 378 N.E.2d 1032, 1037 (1978).

■ Plaintiff asserts vigorously that the City defendants cannot rely upon Mary Edwards' hearsay statements to establish probable cause. This, however, is not the law since it is clear that probable cause to support a warrantless arrest may be based on hearsay evidence. Fed.R.Crim.P. 41(c)(1); *Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960); *United States v. Burke,* 517 F.2d

---

**4.** Since all portions of the claims in this cause of action which arise under federal law have been dismissed, the court does not have pendent jurisdiction over the state law claims.

*United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Kurz v. State of Michigan,* 548 F.2d 172, 175 (6th Cir. 1977).

377, 380 (2d Cir. 1975); *People v. Elwell*, 50 N.Y.2d 231, 236, 428 N.Y.S.2d 655, 659, 406 N.E.2d 471, 475 (1980). Insofar as Mary Edwards was the victim with an eyewitness account of the very crime she had reported to the police, the police were entitled to rely upon her word. If she was lying, the plaintiff's remedy is a tort suit against Mrs. Edwards, not the police. The veracity of citizen complaints who are victims of the very crime they report to the police is therefore assumed. *Adams v. Williams*, 407 U.S. 143 at 146–47, 92 S.Ct. 1921 at 1923–24, 32 L.Ed.2d 612; *United States v. Rueda*, 549 F.2d at 869. As Judge Friendly noted in *United States v. Miley*, 513 F.2d 1191, 1204 (2d Cir.), *cert. denied*, 423 U.S. 842, 96 S.Ct. 75, 46 L.Ed.2d 62 (1975) "to require a showing of previous reliability of . . . a victim or witness [would] . . . make his information totally unavailable, despite the peculiar likelihood of its accuracy." *Id.*

Probable cause to believe that the plaintiff had committed a crime did not rest solely on the credibility of Mrs. Edwards. Additionally, the police had personally observed a broken window and a bottle with a heavy odor of gasoline in Mary Edwards' apartment. Although Ms. Greene suggests that this evidence was placed there in an attempt to frame her, the statements made by the other tenants that they too saw Ms. Greene harassing Mary Edwards on the morning of the rock and bottle attack sufficiently corroborate the Edwards' story. As suggested by LaFave in his Treatise on the Fourth Amendment, although there is "always the remote possibility that the report . . . may later prove to have been inaccurate, mistaken or untruthful, nevertheless the . . . dangerous nature of the reported crime is such that responding officers should not be required to insist that the [individual reporting the crime] 'prove her case' . . . before acting in reliance upon her representations." 1 LaFave, *Search and*

Seizure—A Treatise on the Fourth Amendment*, 592 (1978), quoting *People v. Johnson*, 15 Cal.App.3d 936, 93 Cal.Rptr. 534 (1971).

Even if there were not probable cause for the arrest of plaintiff, Detective Brown still has a good faith defense. Police officers who arrest without probable cause are not liable for civil rights claims if the officer believed in good faith that the arrest made was lawful and if this belief was reasonable. *See Procunier v. Navarette*, 434 U.S. 555, 561–62, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1977); *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *Dominguez v. Beame*, 603 F.2d 337, 342–43 (2d Cir. 1979).

The record contains no indications of bad faith on the part of Detective Brown. All that is presented by Ms. Greene are speculative and unfounded allegations of constitutional deprivations. Such general allegations fail to establish either lack of probable cause or bad faith. *See e.g., Black v. United States*, 534 F.2d 524 (2d Cir. 1976); *Koch v. Yunich*, 533 F.2d 80 (2d Cir. 1976).[5]

### CONCLUSION

For the reasons set forth above, summary judgment is granted in favor of Detective Brown, individually and as an agent for the New York City Police Department, as well as for the New York City Police Department.

SO ORDERED.

---

5. Even assuming Ms. Greene's vague and conclusory allegations establish that she was defamed, defamation does not infringe upon any constitutional right and thus is not cognizable under the civil rights law. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976);

*Rosenberg v. Martin*, 478 F.2d 520 (2d Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Schumate v. People of the State of New York*, 373 F.Supp. 1166 (S.D.N.Y. 1974).