Dr. Josephine Florence BANNERJEE,
M.D., Plaintiff,

v.

Lycourgos PAPADAKIS, M.D., Greenpoint Hospital, Sydney Gerstler, individually and as Administrator of Brooklyn Jewish Medical Center, Association of Salaried Physicians, Cosimo Basirico, M.D., individually and as President of Association of Salaried Physicians, New York City Health and Hospital Corp., Jay Kriegal, Individually and as President of Brooklyn Jewish Medical Center, David Diamond, Individually and as Attorney for Brooklyn Jewish Medical Center, Defendants.

No. 83 CV 2262.

United States District Court,
E.D. New York,
Civil Division.

March 22, 1984.

Joan Goldberg, New York City, for plaintiff.

Robert E. Smith, New York City, for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff seeks four million dollars in this action, in which she alleges violations of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), as well as 42 U.S.C. §§ 1983, 1985, and, apparently, New York's common law of fraud. Defendants Kriegel and Diamond have moved to dismiss. Fed.R.Civ.P. 12(b)(6). For the reasons developed below, the motion is granted.

The complaint alleges the following facts. Plaintiff was employed as a pathologist at defendant Greenpoint Hospital ("Greenpoint"), a municipal hospital owned and operated by defendant New York City Health and Hospital Corporation ("NYCHHC"). Greenpoint is affiliated with Brooklyn Jewish Medical Center ("BJMC"). Complaint ¶¶ 2–3. As a Greenpoint employee, plaintiff is represented by defendant Association of Salaried Physicians ("Union"), which has a duty to fairly represent plaintiff and to protect her rights under a collective bargaining agreement. *Id.* ¶¶ 5–6.

Defendant Dr. Papadakis was Director of Pathology and was plaintiff's supervisor at Greenpoint. In early 1978, technicians at Greenpoint reported to defendant Dr. Gerstler, Greenpoint's administrator, that Papadakis was violating NYCHHC rules by using Greenpoint facilities for private practice, and by paying his secretary a full salary though she only worked part time. Papadakis accused plaintiff of reporting the illegal conduct and began to harass her. Complaint ¶¶ 8, 16–18.

Papadakis reduced plaintiff's position from full-time to 20 hours per week. After complaining to the Union, plaintiff was reinstated to her full-time position. Six months later, in April, 1979, plaintiff was notified that her position would be reduced to 30 hours per week, commencing in July,

1979. Once again, plaintiff complained to the Union. This time, however, defendant Dr. Basirico, President of the Union and Acting Director of Greenpoint's Department of Medicine, refused to file for arbitration or otherwise act on plaintiff's behalf. Complaint ¶¶ 19–25.

With Papadakis continuing to harass her, plaintiff again demanded arbitration, and the Union again refused. After this refusal, the time period lapsed for demanding arbitration. Then, on February 1, 1980, Papadakis reduced plaintiff's position to 20 hours per week. Complaint ¶¶ 28–33.

Plaintiff responded by filing a complaint with the "Inspector General" (the Complaint does not further identify him), charging Papadakis with various violations of NYCHHC rules. Additionally, the Union filed a timely demand for arbitration to protest the latest reduction in plaintiff's position.

At that arbitration Union president Basirico and defendant Diamond, an administrator of BJMC, advised plaintiff to resign, because she would not be rehired for the following year. Additionally, Papadakis and Greenpoint told plaintiff that Papadakis would not work with her and that no job would exist for her at Greenpoint as of July, 1980. Plaintiff says these were false representations. Complaint ¶¶ 37–40.

To induce plaintiff to withdraw her charges against Papadakis, defendants Basirico and Gerstler entered into a settlement agreement with her. Plaintiff would, *inter alia*, resign her position and withdraw all charges against Papadakis. In return, plaintiff would receive $19,000, her file would be purged of all derogatory material, and she would receive letters of recommendation from Papadakis and Greenpoint. Plaintiff then resigned. Complaint ¶¶ 40–42.[1]

### Discussion

The statutes relevant to this action appear only as jurisdictional allegations. It is almost impossible to discern from plaintiff's complaint the constitutional, statutory or common-law ground for each of plaintiff's three claims. Nevertheless, construing the complaint in terms most favorable to the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1976), I perceive those claims to be the following.

First, plaintiff alleges Basirico and the Union breached their duty of fair representation during plaintiff's arbitration proceedings with Greenpoint. Complaint ¶¶ 44–45. This claim can fairly be construed to include defendants Kriegel and Diamond only by incorporation of paragraph 12 of the complaint, which alleges that Kriegel and Diamond "conspired with defendants ... Basirico and Union in the destruction of plaintiff's career."

Plaintiff's second claim is that Papadakis entered into the settlement agreement "falsely and fraudulently," and "without any intention of abiding by said agreement." Papadakis's post-settlement actions, according to plaintiff, have prevented her from obtaining another position within NYCHHC. Complaint ¶¶ 46–50. Giving this claim the broadest possible reading, it cannot be taken to include defendants Kriegel and Diamond.

Finally, plaintiff alleges a claim against all defendants, asserting that "through concerted action [they] illegally and fraudulently pressured her to resign." Plaintiff further alleges "[t]hat this is a prime example of men joining together to protect one of themselves to the extreme disadvantage of plaintiff who is female." Complaint ¶¶ 51–58.

### The LMRA Claim

Defendants Kriegel and Diamond seek to dismiss any claims against them under § 301 of the LMRA, 29 U.S.C. § 185(a) (1976), on the ground that they are time-barred. *See DelCostello v. International Brotherhood of Teamsters*, —— U.S. ——, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983) (6-month statute of limitations on suits un-

---

**1.** The Settlement Agreement is annexed to the Complaint. It purports to bind Dr. Papadakis, but is signed only by plaintiff, Dr. Basirico, and Dr. Gerstler.

der § 301). I need not address that argument, however, because I find that plaintiff's complaint does not even bring Kriegel and Diamond within the purview of § 301.

■ Section 301 regulates relationships among employees, their unions and employers. Thus, employees may bring actions against their unions under § 301 for the union's breach of its duty of fair representation, and against their employers, for the employer's breach of a collective-bargaining contract. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 561–62, 96 S.Ct. 1048, 1054–55, 47 L.Ed.2d 231 (1976); *Perez v. Dana Corporation, Parish Frame Division*, 718 F.2d 581, 582 (3d Cir.1983); *see Assad v. Mount Sinai Hospital*, 703 F.2d 36, 40–41 (2d Cir.1983).

■ A claim under § 301 must satisfy three requirements. It must allege: 1) a violation; 2) of a contract; 3) between an employer and a labor organization. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 500 (5th Cir.1982), *cert. denied*, — U.S. —, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Province v. Cleveland Press Publishing Co.*, 571 F.Supp. 855, 860 (N.D.Ohio 1983). Additionally, a § 301 suit may be brought for violation of a labor contract only against those who are parties to the contract at issue. *Aacon Contracting Co. v. Association of Catholic Trade Unionists*, 178 F.Supp. 129, 130 (E.D.N.Y.1959), *aff'd per curiam*, 276 F.2d 958 (2d Cir.1960); *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, *supra*.

■ Accepting all the material allegations of the complaint as true, and considering them in a light most favorable to plaintiff, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), I find that no claim under § 301 has been stated against Kriegel and Diamond. The complaint merely alleges that plaintiff was an employee of Greenpoint, and that as such she is represented by Union, which

has a duty to fairly represent plaintiff and protect her rights under the collective bargaining agreement. Complaint ¶¶ 5, 6, 9.

Kriegel and Diamond, however, are alleged to be "administrators of Brooklyn Jewish Medical Center." Complaint ¶ 12. Nowhere in the complaint does plaintiff allege that she was employed by BJMC. By the terms of plaintiff's own pleadings, Kriegel and Diamond are neither members of plaintiff's union, nor plaintiff's employer. They are thus not proper defendants in a § 301 suit. *Carpenters Local Union No. 1846, v. Pratt-Farnsworth, Inc.*, *supra*. I find it significant that although Kriegel and Diamond are named as administrators of BJMC, the medical center is itself not a defendant. Clearly, had BJMC been plaintiff's employer, it would have been a named defendant in a § 301 action.

■ Plaintiff's bare allegation that Kriegel and Diamond conspired with Basirico and the Union to destroy plaintiff's career, Complaint ¶ 12, is insufficient to state a claim under § 301. *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1253–54 (2d Cir.1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). No federal statute confers "independent jurisdiction upon the federal courts for claims of civil conspiracy in the labor relations field." *Id.* Further, conspiracy to violate a labor contract does not vest the court with jurisdiction under § 301. *Id.*

For the above reasons, so much of plaintiff's complaint as alleges claims under § 301 against defendants Kriegel and Diamond is dismissed, with prejudice.

*The § 1983 Claim*

■ Notwithstanding that complaints under 42 U.S.C. § 1983 are to be broadly construed, plaintiff's complaint against defendants Kriegel and Diamond fails to satisfy even the most basic pleading requirements for actions under that statute.[2]

■ Kriegel and Diamond, it is clear from the complaint, are private citizens. A

---

2. It is important to note that plaintiff's complaint was drafted by counsel. Were plaintiff *pro se*, of course, the pleadings would be held to

a more liberal standard. *Robles v. Coughlin*, 725 F.2d 12, at 15 (2d Cir.1983).

private party violates § 1983 only to the extent its conduct involves state action. *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir.1975). To withstand a motion to dismiss, plaintiff "must allege with some particularity that the public defendant acting in his official capacity conspired with the private defendants to deny" plaintiff her rights; vague or conclusory allegations of official participation will not do. *Weiss v. Willow Tree Civic Association*, 467 F.Supp. 803, 811 (S.D.N.Y.1979).

■ Kriegel and Diamond are named in two of the complaint's 58 paragraphs. At paragraph 12, plaintiff alleges Kriegel and Diamond "conspired with defendants Papadakis, Basirico and Union in the destruction of plaintiff's career." Paragraph 37 alleges that at plaintiff's arbitration proceeding, Basirico and Diamond advised plaintiff to resign, because she would not be rehired for the following year. The remaining paragraphs concern primarily action taken by defendant Papadakis alone.

The complaint leaves Kriegel and Diamond's involvement with public officials entirely to the Court's imagination. Absent particularized allegations of state involvement with the private defendants, the complaint cannot stand. Accordingly, so much of plaintiff's complaint as alleges a claim under § 1983 against defendants Kriegel and Diamond is dismissed, without prejudice to renewal.

*The § 1985 Claim*

■ Plaintiff's complaint also fails to satisfy the liberal pleading requirements of 42 U.S.C. § 1985. To state a claim under § 1985, plaintiff must establish: 1) a conspiracy to violate her constitutional rights; and 2) some racial or other class-based discriminatory animus behind the conspirator's actions. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Greene v. Brown*, 535 F.Supp. 1096, 1099 (E.D.N.Y.1982).

■ As to Kriegel and Diamond, the § 1985 claim suffers from the same defects as the § 1983 claim. All we have are vague, conclusory statements about a ubiq-

uitous conspiracy in which Kriegel and Diamond are alleged to be members. Once again, plaintiff has left to the imagination of the Court the role played by these two defendants in this conspiracy. Such a complaint is insufficient to state a claim under the civil rights laws. *Griffin v. Breckenridge, supra*, 403 U.S. at 102, 91 S.Ct. at 1798; *Morpurgo v. Board of Education*, 423 F.Supp. 704, 711 (S.D.N.Y.1976).

For the above reasons, so much of plaintiff's complaint as alleges claims under § 1985 against defendants Kriegel and Diamond is dismissed, without prejudice to renewal.

*Pendent State-Law Claims*

■ Plaintiff appears to be alleging common-law fraud against Kriegel and Diamond. Because all claims against those defendants arising under federal law have been dismissed, the Court will not exercise pendent jurisdiction over any state-law claims that may remain against them. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

*Plaintiff's Cross-Motion Under Rule 15(a)*

While plaintiff has cross-moved to amend her complaint, Fed.R.Civ.P. 15(a), there is no need to rule upon the motion. The dismissals of the actions under §§ 1983 and 1985 having been without prejudice, plaintiff is free to commence a new action under those statutes against these defendants.

SO ORDERED.